[Civ. No. 5365. Fifth Dist. Nov. 7, 1980.]

In re PAUL A., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent., v.
PAUL A., Defendant and Appellant.

COUNSEL

Michael R. Gardina, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and Roger E. Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PIERSON, J.***—Following a high school dance on the evening of September 14, 1979, Michael D. stood in a parking lot beside his Pinto station wagon talking to friends. A Firebird car containing four males, including the appellant, drove by, and one of the occupants said something to Michael about his hat. Michael ignored them and entered his vehicle. The Firebird drove by again and an occupant hollered, "What did you say?" Michael continued to ignore them and tried to drive out one of the exits, but the Firebird drove up and blocked his way. Michael drove toward another exit, but the Firebird again blocked his exit. The parking lot otherwise appeared to be deserted.

When the second block was made, the four males exited the Firebird. Two of them stood by the Firebird. The other two approached Michael's vehicle, and one of them kicked the vehicle. It appeared that one of the latter two was armed with a 15-inch club or pool cue and the other had a shiny object like a chain.

As the four males reentered the Firebird, Michael drove out into the road and past them. At that time Kenneth J. pulled his station wagon alongside Michael's Pinto, asked what was going on, and then told Michael to pull in front of him. One of the Firebird four threw a coke bottle at Kenneth's vehicle but missed. Michael and Kenneth, with his passengers Rebecca and Joseph, then drove off pursued by the Firebird. They drove to Michael's home where Michael and Kenneth parked their vehicles. The Firebird stopped in the street in front of Michael's home and, as the occupants alighted, Joseph asked what they wanted. The men reentered the Firebird, drove to the corner, stopped a few minutes, turned around and proceeded back to Michael's house.

Kenneth and his passengers had started to leave, but as the Firebird progressed back toward Michael's house, they alighted from their vehi-

*Assigned by the Chairperson of the Judicial Council.

cle and stood in the yard. Kenneth was standing at the back of his vehicle when the Firebird passed about eight feet from him at about 60 miles per hour. One of the passengers leaned out of the window and appeared to throw something. Those at Michael's house heard a bang like a metallic thud or clunk.

After the Firebird passed, Kenneth was found unconscious, lying on the ground by the rear wheel of his vehicle. He was bleeding from the left temple area and from his ear, having suffered a basal skull fracture. Two fresh dents were found on the lower tail gate area of Kenneth's car. A rock not indigenous to the driveway or garden area was found beside Kenneth. Similar rocks were seen at the street corner area where the Firebird had stopped immediately prior to its last pass by Michael's house.

A supplemental petition pursuant to section 602 of the Welfare and Institutions Code was filed in juvenile court, alleging in count one that appellant Paul A. committed an assault upon Kenneth J. with a deadly weapon (rocks) and by means of force likely to produce great bodily injury in violation of section 245 of the Penal Code. Count two of the petition alleges appellant conspired with other persons to commit the crime of assault with a deadly weapon, a violation of section 245 of the Penal Code; and that as overt acts the minors entered a vehicle armed with sticks and stones and pursued their victim until the opportunity arose where they could pelt him with stones.

At the jurisdictional hearing, appellant's attorney objected to the introduction of testimony of a taped statement given by his client to Detective Stovall. Appellant alleges that the *Miranda* procedure was not followed and thus there was not a knowing and intelligent waiver of his client's rights. Prior to questioning appellant at the police department on September 26, 1979, the following colloquy occurred: "Q. [Detective Stovall.] Tony, you have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you can't afford to hire a lawyer we'll get you one, if you want one. Being a juvenile you also have the right to have your parents here if [*sic*] want them. Do you understand those rights that I read to you?

"A. [The answer is not clear on tape. Officer Stovall testified the answer was affirmative.]

"Q. Will you talk to me?

"A. Yes."

The court found that appellant understood and waived his rights. Appellant's objection was overruled and the statement was received into evidence. In the statement, appellant made the following remarks: "Q. [Detective Stovall.] Did anybody get out of the car? When it was stopped?

"A. Everybody got out.

"Q. Everybody got out? Did anybody pick up anything?

"A. No, cause ah I was going to the restroom and I looked... everybody just like, you know, scattered around like that. They could have been picking stuff up or something, I don't know.

"Q. Did you see anybody pick up any rocks or anything like that?

"A. No, I didn't...told ah that man, I told him I didn't see any pick...you know, I didn't see nobody pick up (unintelligible).

"Q. Okay, when you got back in the car...everybody got back in the car, okay. Did they come back in front of the house again?

"A. Ah, yeah.

"Q. Did anybody throw anything out of the car? At this white car?

"A. I just seen a stick. That's all I seen. I didn't see noth....

"Q. Who had the stick?

"A. Ah ... I had the stick.

"Q. You had the stick?

"A. Yeah.

"Q. What was you going to do?

"A. I didn't, I didn't throw at the house, I threw (unintelligible). They gave me the stick, I don't want stick, I just threw it out. It was a big stick. I don't know. You know those poles?

"Q. Ah huh.

"A. It was one of those. And I, I put it out, I threw it out. I said I don't want this stick. I told the guys and they go throw it out then. I threw it out.

"Q. Did anybody else in your car throw anything out?

"A. Huh ah.

"Q. When they went by the house?

"A. I didn't see em. They could have. But I didn't see em. That's what I told you."

At the conclusion of petitioner's case, appellant moved to dismiss the petition pursuant to Penal Code section 1118. The motion was denied.

Following receipt of appellant's evidence and argument, the juvenile court found both counts of the petition true.

### APPELLANT MADE A SUFFICIENT WAIVER OF HIS MIRANDA RIGHTS. HIS EXTRAJUDICIAL STATEMENT WAS PROPERLY ADMITTED INTO EVIDENCE.

■ Appellant contends that before Stovall asked appellant if he would talk to him he should have waited for a separate response to the question whether appellant understood his rights.

The tape recording in evidence shows that appellant did answer that question. However, the answer on tape is not clear. We will discuss appellant's claim of error on the premise that no answer was given to the question "Do you understand those rights that I read to you?"

Stovall properly advised appellant of his constitutional rights. Before proceeding with questions, a waiver of those rights had to be made by appellant. No particular manner or form is required by *Miranda* to signify an acceptable waiver. (*Miranda* v. *Arizona* (1966) 384 U.S. 436,

pp. 444-445 [16 L.Ed.2d 694, 706-707, 86 S.Ct. 1602, 10 A.L.R.3d 974].)

In *People* v. *Johnson* (1969) 70 Cal.2d 541, 557-558 [75 Cal.Rptr. 401, 450 P.2d 865, 43 A.L.R.3d 366],[1] the Supreme Court adopted the rationale of *United States* v. *Hayes* (4th Cir. 1967) 385 F.2d 375, in ruling on what type of conduct is sufficient to express an adequate waiver of *Miranda* rights. The court stated: "We disagree with the authorities cited by defendant, and find the better rule to be that stated in *United States* v. *Hayes* (4th Cir. 1967) 385 F.2d 375, 377-378: '. . . [W]e cannot accept appellant's suggestion that because he did not make a statement—written or oral—that he fully understood and voluntarily waived his rights after admittedly receiving the appropriate warnings, his subsequent answers were automatically rendered inadmissible. Of course, the attendant facts must show clearly and convincingly that he did relinquish his constitutional rights knowingly, intelligently, and voluntarily, but a statement by the defendant to that effect is not an essential link in the chain of proof. . . .'"

The court in *People* v. *Hurlic* (1971) 14 Cal.App.3d 122 [92 Cal.Rptr. 55], addressed a contention that a defendant's waiver of his *Miranda* rights was inadequate because the police officer could only testify that the defendant "indicated" or "acknowledged" the various warnings. The court ruled as follows: "First, it should be clear that even if we had a tape recording of the conversation and could hear the defendant say loud and clear that he understood his rights, we could reach a finding that he did so only by inference. All that happened here is that the trial court relied on a different inference: since the 'acknowledgement' to which the officer testified may have been a mere nod of the head it can hardly be interpreted as more than a statement that defendant heard, rather than that he understood the warnings. Thus we conclude that defendant understood because he said he heard, rather than that he understood because he said he understood. The jump may be longer, but the difference is not of constitutional magnitude." (*Id.*, at p. 127, fns. omitted.)

The United States Supreme Court case of *North Carolina* v. *Butler* (1978) 441 U.S. 369 [60 L.Ed.2d 286, 99 S.Ct. 1755], cited *Johnson* with approval and followed *Johnson*'s rationale in holding that an ex-

---

[1]Disapproved on other grounds in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 899, footnote 8 [135 Cal.Rptr. 786, 558 P.2d 872].

plicit statement of waiver is not invariably necessary to support a finding that a defendant waived his right to remain silent or right to counsel guaranteed by *Miranda*. (*Id.*, at pp. 376-377 [60 L.Ed.2d at p. 294].) As the court stated at pages 374-375 [60 L.Ed.2d at pages 292-293]: "...the question of waiver must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' [Citations.]"

In the instant case, appellant was 17 years old and already a ward of the court when questioned by Detective Stovall. Preliminarily, appellant was advised of his rights and then was asked two unambiguous questions, "Do you understand those rights that I read to you? Will you talk to me?" Appellant responded yes, and proceeded to answer questions.

Before admitting the statement in evidence, an *in camera* hearing was held at which appellant testified. The trial court found that appellant understood and waived his constitutional rights. The record substantially supports that conclusion.

### THE TRIAL COURT DID NOT ERR IN FAILING TO GRANT APPELLANT'S MOTION TO DISMISS PURSUANT TO PENAL CODE SECTION 1118.

■ Appellant contends that Penal Code section 1118 compelled a dismissal following petitioner's case. This contention is valid only if (1) section 1118 applies to juvenile cases; and (2) the evidence was insufficient to properly convince the court of the truth of the petition.

Penal Code section 1118 provides as follows: "In a case tried by the court without a jury, a jury having been waived, the court on motion of the defendant or on its own motion shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading after the evidence of the prosecution has been closed if the court, upon weighing the evidence then before it, finds the defendant not guilty of such offense or offenses. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

*In re Joseph H.* (1979) 98 Cal.App.3d 627 [159 Cal.Rptr. 681], specifically held that section 1118 is inapplicable to juvenile proceedings. It rejected a minor's contention that the trial court erred in denying an ac-

quittal motion: "Not all rules of criminal procedure are applicable to juvenile courts. (*In re Mitchell P.* (1978) 22 Cal.3d 946, 953 [151 Cal.Rptr. 330, 587 P.2d 1144]; *In re David G.* (1979) 93 Cal.App.3d 247, 253 [155 Cal.Rptr. 500]; see *McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528, 533 [29 L.Ed.2d 647, 653-654, 91 S.Ct. 1976].) '[W]hen due process and other constitutional demands have been satisfied, reasonable differences in criminal and juvenile evidentiary procedures are constitutionally permissible.' (*In re Mitchell P., supra,* 22 Cal.3d at p. 953.) Equal protection does not forbid differences in the formalities with which a court goes about determining whether an individual has committed criminal misconduct; courts must 'look to the consequences of the proceeding rather than the formal labels to determine what rights are appropriately applied to juvenile proceedings.' (*In re Gladys R.* (1970) 1 Cal.3d 855, 866, fn. 21 [83 Cal.Rptr. 671, 464 P.2d 127].)

"The language of Penal Code section 1118 reveals that 'the Legislature did not intend the statute to apply to juvenile court proceedings.' (See *In re David G., supra,* 93 Cal.App.3d at p. 252.) A juvenile cannot waive a jury in a wardship proceeding for he has no right to a jury in such a proceeding. (*McKeiver* v. *Pennsylvania, supra,* 403 U.S. at p. 545 [29 L.Ed.2d at p. 661]; *In re Daedler* (1924) 194 Cal. 320 [228 P. 467]; *In re T.R.S.* (1969) 1 Cal.App.3d 178, 182 [81 Cal.Rptr. 574].) Nor is a juvenile formally subject to a 'judgment of acquittal' or a 'not guilty' finding. In addition, the manifest purpose of a section of this type is to terminate the case at the earliest possible time when the prosecution's evidence is insufficient to support conviction. (*People* v. *Valerio* (1970) 13 Cal.App.3d 912, 921 [92 Cal.Rptr. 82]; *People* v. *Odom* (1970) 3 Cal.App.3d 559, 565 [83 Cal.Rptr. 520].) Provided that in both adult and juvenile criminal proceedings the charged misconduct is established by proof beyond a reasonable doubt (*In re Mitchell P., supra,* 22 Cal.App.3d at p. 953), neither equal protection nor 'fundamental fairness' *requires* that a court ascertain whether the prosecution has met this burden before the defendant rests. We hold, therefore, that Penal Code section 1118 is inapplicable to juvenile court proceedings." (*Id.,* at pp. 631-632.)

There is no specific authority within the Welfare and Institutions Code for a procedure in juvenile proceedings equivalent to the motion for judgment of acquittal.

California Rules of Court, rules 1351 through 1356, provide procedural rules for cases petitioned under Welfare and Institutions Code

sections 601 and 602. Rule 1355 provides rules for contested hearings. That rule provides, in pertinent part: "(f) If, after hearing the evidence, the court determines that the allegations of the petition are true, it shall make findings as to each of the following, noted in the minutes of the court:

"(1)   That notice has been given as required by law;

"(2)   The birthdate and county of the residence of the minor;

"(3)   That the allegations of the petition are true as alleged;

"(4)   That the minor is a person described by section 601 or 602; and

"(5)   If the minor is found to be a person described by section 602, the degree of the offense and whether the offense would be a misdemeanor or felony had the offense been committed by an adult. These determinations may be deferred until the disposition hearing.

"(g)   If, after hearing the evidence, the court determines that the allegations of the petition are not true, it shall make findings as to each of the following, noted in the minutes of the court:

"(1)   That notice has been given as required by law;

"(2)   The birthdate and county of the residence of the minor;

"(3)   That the allegations of the petition are not true.

"The court shall then order that the petition be dismissed and that the minor be discharged from any detention or restriction, if applicable."

Rule 1355 (f) and (g) derive from Welfare and Institutions Code section 702 which provides, in relevant part: "After hearing such evidence, the court shall make a finding, noted in the minutes of the court, whether or not the minor is a person described by Sections 300, 601, or 602. If it finds that the minor is not such a person, it shall order that the petition be dismissed and the minor be discharged from any detention or restriction theretofore ordered. If the court finds that the minor is such a person, it shall make and enter its findings and order accord-

ingly, and shall then proceed to hear evidence on the question of the proper disposition to be made of the minor. . . ."

The phrase "such evidence" refers to Welfare and Institutions Code section 701 which states, in pertinent part: "At the hearing, the court shall first consider only the question whether the minor is a person described by Section 300, 601, or 602. The admission and exclusion of evidence shall be pursuant to the rules of evidence established by the Evidence Code and by judicial decision. Proof beyond a reasonable doubt supported by evidence, legally admissible in the trial of criminal cases, must be adduced to support a finding that the minor is a person described by Section 602, and a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Section 300 or 601. . . ."

Neither section 702 nor rule 1355 authorizes a motion for judgment in favor of the minor at the close of the People's case. The identical phrase "the evidence" appears in subdivisions (f) and (g) of rule 1355. Obviously, as used in subdivision (f), the phrase must refer to all the evidence. A court could not find the petition true at the close of the People's case. Since parallel language is used in subdivision (g), the reasonable conclusion is that the rule envisages that a judgment that the petition is not true will only be made after all the evidence has been heard.

Respondent suggests that an argument can be made that Code of Civil Procedure section 631.8 (motion for judgment) applies because a juvenile trial is a quasi-civil proceeding. That section states: "After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make findings as provided in Sections 632 and 634 of this Code, or may decline to render any judgment until the close of all the evidence. The court may consider all evidence received, provided, however, that the party against whom the motion for judgment has been made shall have had an opportunity to present additional evidence to rebut evidence received during the presentation of evidence deemed by the presenting party to have been adverse to him, and to rehabilitate the testimony of a witness whose credibility has been attacked

by the moving party. Such motion may also be made and granted as to any cross-complaint.

"If the motion is granted, unless the court in its order for judgment otherwise specifies, such judgment operates as an adjudication upon the merits."

By its terms, section 631.8 is inapplicable. It appears within title 8 of part 2 of the Code of Civil Procedure. Title 8 is captioned "Of the Trial and Judgment in Civil Actions." A juvenile proceeding is not a civil action within the meaning of title 8 of the Code of Civil Procedure.

Section 631.8 contains provisions clearly inapplicable to juvenile proceedings. For example, the requirement that a court which renders a judgment in favor of the moving party "shall make findings as provided in Sections 632 and 634 of this code" keys into the traditional findings of fact required in civil actions. Such findings are not required in juvenile actions.

Traditional fact findings are made with a view toward appellate review. A section 631.8 motion, when granted, "operates as an adjudication upon the merits." It is appealable. However, an adjudication on the merits to the effect that a Welfare and Institutions Code section 602 petition was not true could not be appealed by the People, just as a judgment of acquittal entered pursuant to section 1118 is not appealable. (Pen. Code, § 1118.2.)

We hold that Penal Code section 1118 is inapplicable to juvenile court proceedings.

■ Assuming arguendo that appellant did have the right to move for a dismissal of the petition at the end of the People's case, we examine his contention that the evidence failed to establish (1) that appellant threw anything from the vehicle in which he was riding; or (2) that any such projectile struck Kenneth.

The evidence disclosed that as the car passed Kenneth, one of the occupants leaned out and appeared to throw something. Witnesses heard a bang as if something hit metal. Two dents were found on Kenneth's car and a rock was found near the unconscious Kenneth. From all of the evidence the trial court could reasonably infer that when appellant and his companions stopped at the intersection they obtained rocks and

a stick to throw at Michael and his friends; that as the Firebird again was driven past Michael's house, appellant and his companions threw the rocks and stick striking Kenneth and his car. Substantial evidence supports the finding that the four occupants of the Firebird were all responsible principals to the offenses alleged in the petition.

The evidence before the court was sufficient to sustain a finding that the petition was true.

Judgment of the superior court is affirmed.

Brown (G. A.), P. J., and Thompson, P. J.,* concurred.

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.