[Crim. No. 43857. Second Dist., Div. Five. Mar. 13, 1984.]

In re HECTOR R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
HECTOR R., Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Thomas Bleauvelt and J. Courtney Stevelson, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gary R. Hahn and Richard B. Cullather, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**EMERSON, J.**\*—This is an appeal from a finding of the trial court that the appellant, a young 16-year-old Latino youth, came within the provisions of section 602 of the Welfare and Institutions Code in that he committed robbery in violation of section 211 of the Penal Code and was armed with a firearm, to wit: a handgun within the meaning of Penal Code section 12022, subdivision (a).

This is an appealable order and is entitled to precedence over all other cases of this court. (Welf. & Inst. Code, § 800.)

Appellant moved to suppress all tangible and intangible evidence obtained as a result of the illegal search and seizure pursuant to Welfare and Institutions Code sections 701 and 701.1.[1] The transcript clearly shows the in-

---

\*Assigned by the Chairperson of the Judicial Council.

[1]Section 701 of the Welfare and Institutions Code reads in pertinent part: "At the hearing, the court shall first consider only the question whether the minor is a person described by Section[s] 300, 601, or 602. The admission and exclusion of evidence shall be pursuant to the rules of evidence established by the Evidence Code and by judicial decision. Proof beyond a reasonable doubt supported by evidence, legally admissible in the trial of criminal cases, must be adduced to support a finding that the minor is a person described by Section 602, and a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Section 300 or 601."

Section 701.1 of the Welfare and Institutions Code reads as follows: "At the hearing, the court, on motion of the minor or on its own motion, shall order that the petition be dismissed and that the minor be discharged from any detention or restriction therefore ordered, after the presentation of evidence on behalf of the petitioner has been closed, if the court, upon weighing the evidence then before it, finds that the minor is not a person described by Section 601 or 602. If such a motion at the close of evidence offered by the petitioner is not granted, the minor may offer evidence without first having reserved that right."

tense pressure on the trial courts with too many cases and too few judicial personnel hearing same. Counsel were asked several times to expedite their questioning and argument.

There seemed to be some confusion about the motion to suppress and the case-in-chief. The court explained to the parties that the motion was usually heard first and the case was usually submitted on the same evidence to save time.

The People rested on the motion and submitted the "case-in-chief" on the same evidence. Upon inquiry of the defense/appellant whether there was any affirmative defense, defense called appellant and two witnesses. After argument, the case was submitted for both sides. No other waivers were taken.

The court sustained the petition beyond a reasonable doubt, and found that the appellant participated in the crime of robbery (Pen. Code, § 211), and found armed allegation under Penal Code section 12022, subdivision (a) to be true, thereby bringing the appellant under the provisions of Welfare and Institutions Code section 602.

Thereafter, he was remanded to the California Youth Authority for not to exceed six years. ■ There was adequate evidence for the judge to sustain the petition under Welfare and Institutions Code section 602.

The facts of the case are that victim Romero was approached by three young men, two Latinos and one black youth, at the corner of Vermont and Adams on November 8, 1982, at 10 p.m. The larger of the two Latinos was wearing a brown checked jacket or shirt. The black youth pointed a handgun at Romero. The larger Latino took a knife, sheath and $160 (including one $50 bill) from Romero. The robbery was reported to the police department approximately one hour later.

The victim made a separate identification of each of the three people located in separate cells, after their apprehension twenty minutes later, as having been the robbers. He identified the shirt of one as the brown plaid jacket or shirt he saw during the robbery. He identified the smaller Latino as being with the other two and also identified a knife as the one which had been taken from him.

Later, Mr. Romero attended a regular lineup at juvenile hall. He did not pick out appellant. He picked out another person as more or less being one of the two Latinos in the robbery. At the trial, he indicated the shirt the

larger Latino was wearing was "like that." He was also able to recognize his knife and sheath.

The question is posed whether the police had the legal authority to detain, question and transport to the police station the appellant, one of the Latinos.

Officer Samanigo of the Los Angeles Police Department gang detail testified that on the night of November 8, 1982, he observed a young black man and two Latinos at about 10 p.m. The black youth had a knife and what appeared to be a small handgun. The black youth had the knife on his hip. He seemed to have a small caliber, chrome handgun in his right hand. They all appeared to be juveniles. The officers stopped the car and approached the juveniles. The officers were in an unmarked police vehicle. They were able to get close before they were seen. At that point, the black youth ran southbound. He was attempting to take the knife out of his belt as he was running and he dropped the gun. He was apprehended approximately 60 feet away by another police unit.

The detectives recognized both Latinos from their attire as being gang members from a rival gang (Play Boys), outside their territory (Harpie Gang area). They gave conflicting statements as to why they were there and how they met the black youth. Because of conflicting statements and age, they were taken to the station as curfew violators (10:30 p.m.) and for their own protection.

Approximately 15 minutes later, at the station, the detectives heard a police broadcast relating to a robbery that had recently occurred at Adams and Vermont by two male Latinos and one male black youth wearing a brown plaid shirt. The black youth was wearing a black jacket, black cap and using a 25-chrome-automatic gun. The boys were apprehended about one mile from the scene of the robbery. The black youth was a School Yard Crip Gang member.

Appellant, for the first time on appeal, argues that part of the basis for detention of appellant was the Los Angeles Municipal Code section 45.03 curfew ordinance.[2] Appellant contends that there was no probable cause to stop and detain the minors because it was unreasonable, and also that curfew ordinances of this type are unconstitutional. (There is no contention that the Los Angeles Municipal Code, § 45.03 has been found unconstitutional.)

[2]Los Angeles Municipal Code section 45.03 states as follows: "(a) No person under the age of eighteen years shall loiter about any public street, avenue, alley, park or other public place between the hour of 10:00 o'clock P.M. and the time of sunrise of the following day unless accompanied by his or her parent or legal guardian having legal custody and control of his or her person or by his or her spouse over the age of twenty-one years."

The court found that the officer's decision to detain the Latino minors for a curfew violation and their protection was rational and reasonable under the circumstances. ■ Where it is within the court's discretion to so find it will not be disturbed on appeal.

No modification of or addition to findings will be attempted where the trial judge's findings are based upon substantial evidence. (See *Hicks* v. *Barnes* (1952) 109 Cal.App.2d 859, 862-863 [241 P.2d 648].) As this court agrees that the actions of the officers were reasonable in stopping and detaining the appellant, there is no necessity to determine the constitutionality of the Los Angeles Municipal Code section 45.03 relating to curfew.

■ An arrest made in good faith reliance on an ordinance (even though) subsequently declared to be unconstitutional is made with probable cause and is valid. (*Michigan* v. *DeFillippo* (1979) 443 U.S. 31 [61 L.Ed.2d 343, 99 S.Ct. 2627].) A prudent officer should not be required to anticipate that a court might later hold the ordinance unconstitutional. Police are charged to enforce laws until and unless they are declared unconstitutional. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement. (*Id.* at pp. 37-38 [61 L.Ed.2d at p. 350].)

■ Circumstances short of probable cause to make an arrest may justify a police officer stopping and briefly detaining a person for questioning or other limited investigation. (*People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *Terry* v. *Ohio* (1968) 392 U.S. 1, 22 [20 L.Ed.2d 889, 906, 88 S.Ct. 1868].)

The reasonableness under all the circumstances of the particular governmental invasion of a citizen's personal security is the test. (*Terry* v. *Ohio, supra,* 392 U.S. at p. 19 [20 L.Ed.2d at p. 904].)

■ Balancing these factors, the courts have concluded that in order to justify an investigative stop or detention, the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing on his training and experience, to suspect the same criminal activity and the same involvement as the person in question. The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be

acting in complete good faith. (*Terry* v. *Ohio, supra,* 392 U.S. at p. 22 [20 L.Ed.2d at p. 906]; *People* v. *Superior Court (Kiefer)* (1970) 3 Cal.3d 807, 829 [91 Cal.Rptr. 729, 478 P.2d 449]; *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].)

■ The officers here, members of the gang detail, had reason to stop the minor. The officers' decision was partially based upon the curfew violation and partially on concern about gang activity. The latter apparently had to do with the black youth being a gang member on another gang's "turf"; conflicting statements; the "possible" involvement of the black youth who had a gun and a knife, but also with the possibility of his being a victim of crime in a strange neighborhood. The minors' personal safety had to be considered. (Welf. & Inst. Code, §§ 625, 625.5.)

All of these articulable facts fulfill the test of *In re Tony C., supra,* 21 Cal.3d 888 and *People* v. *Ramirez* (1983) 34 Cal.3d 541 [194 Cal.Rptr. 454, 668 P.2d 761].

Appellant's motion to suppress was properly overruled.

There was no express constitutional rights waiver taken from the appellant at any time. None was required.

■ A fair hearing is a requisite of due process in both civil and criminal cases, and its denial is an act in excess of jurisdiction and reversible error per se. (See, e.g., trial judge's denial of right to testify or to offer evidence (*Guardianship of Waite* (1939) 14 Cal.2d 727 [97 P.2d 238]); denial of right of cross-examination (*McCarthy* v. *Mobile Cranes, Inc.* (1962) 199 Cal.App.2d 500 [18 Cal.Rptr. 750]); refusal to hear case on merits (*Erlin* v. *National Union Fire Ins. Co.* (1936) 7 Cal.2d 547 [61 P.2d 756]).)

The trial judge was pressing the parties to move along. The procedure should have been clearer. However, both seem to have had their say and to have presented and cross-examined witnesses. This court cannot find as a matter of law that there was a denial of procedural due process in the conduct of the trial. ■ " '. . . Equal protection does not forbid differences in the formalities with which a court goes about determining whether an individual has committed criminal misconduct; courts must "look to the consequences of the proceeding rather than the formal labels to determine what rights are appropriately applied to juvenile proceedings." (*In re Gladys R.* (1970) 1 Cal.3d 855, 866, fn. 21 [83 Cal.Rptr. 671, 464 P.2d 127].)' " (*In re Paul A.* (1980) 111 Cal.App.3d 928, 937 [168 Cal.Rptr. 891].) "Juveniles are entitled to the fundamental protection of the Bill of Rights in proceedings that may result in confinement or other sanctions,

whether the state labels these proceedings 'criminal' or 'civil.'" (*Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, 375 [93 Cal.Rptr. 752, 482 P.2d 664].)

██ "The judge is given control of the proceedings and, except where there is a contested issue of fact or law, he is required to conduct the proceedings in an informal, nonadversary atmosphere with a view to obtaining the maximum cooperation of the minor upon whose behalf the petition is brought." (*Id.,* at p. 377.)

██ The appellant takes this occasion to raise for the first time on appeal the right of juveniles in California to a jury trial. Although it is a fundamental right of adults, it has not been extended to juveniles in this state.

The processes of the juvenile court law are, as we have seen, not penal in character. Juveniles are not directly charged with crimes. Minors have no inherent right to a trial by jury.

The federal Constitution does not require that the full panoply of rights accorded an adult accused of a crime be erected in the juvenile court. (*In re T.R.S.* (1969) 1 Cal.App.3d 178, 182 [81 Cal.Rptr. 174].)

To adopt a trial by jury in the juvenile court would introduce a strong tone of criminality in the proceedings.

██ "Under the doctrine of *stare decisis,* all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction. Otherwise, the doctrine of *stare decisis* makes no sense." (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

██ Most of the basic constitutional rights of adults have been accorded juveniles in various cases of the United States Supreme Court, the California Supreme Court, as well as this court. However, there still remains the very substantial distinctions that certain juveniles are not being charged with crimes. The State of California, as a matter of public policy, has chosen to maintain the doctrine of *parens patriae* in relating to juveniles. This is a substitute for the parents of the juveniles. It treats the juvenile as a general sociological problem, placing a great deal of the substance of the community at the disposal of the juvenile court, in an attempt to rehabilitate and make a better citizen of the child, rather than concentrate on the theory of punishment.

Under certain circumstances, juveniles between 16 and 18 years of age may be found to be unfit to be tried as juveniles and certified to the adult courts to be tried for their crimes. This is dependent usually upon the crime, past treatment by juvenile court and degree of sophistication. (Welf. & Inst. Code, § 606.)

In this particular instance, the juvenile was determined to be a ward of the court. He was under 16 years of age.

In this case he had no right to a trial by jury. (*In re Paul A.*, *supra*, 111 Cal.App.3d 928, 937; *In re T.R.S.*, *supra*, 1 Cal.App.3d 178, 181-182; *In re Daedler* (1924) 194 Cal. 320 [228 P. 467].)

The judgment is affirmed.

Ashby, Acting P. J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 17, 1984. Bird, C. J., was of the opinion that the petition should be granted.