[No. B033096. Second Dist., Div. Seven. Sept. 14, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD HOLGUIN, Defendant and Appellant.

1310

**COUNSEL**

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Donald E. De Nicola and William R. Weisman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—Defendant Richard C. Holguin (Holguin) appeals from the judgment following his conviction for first degree murder and attempted murder. On appeal, Holguin raises various alleged errors. We conclude none of these alleged errors warrants reversal and accordingly affirm the judgment.

### STATEMENT OF FACTS AND PROCEEDINGS BELOW

On September 5, 1986, Holguin, a member of the Eastside Los Street gang, and Gualberto Gutierrez, nicknamed Bert, a member of the 38th Street gang, decided to kill members of a rival street gang, the Florencia. The motive underlying this decision was unclear.[1] Holguin and Bert drove around in Holguin's 1966 orange/yellow van looking for potential victims. When the van passed a group of nine to ten Florencia gang members congregated in Bethune Park, Bert fired six to seven shots from a .22-calibre rifle at the group, striking one man in the thigh.

---

[1] Holguin alternatively told the investigating deputies he wanted to retaliate for his cousin's murder or he wanted to retaliate for the drive-by shootings which occurred before he and Bert set out.

Approximately 20 minutes later, the van passed another Florencia gang member, Jose Smith, who was walking with 2 girls. The van passed Smith and the two girls, then turned around in a cul-de-sac and parked, its lights turned off and the engine left running. Someone within the van called out he was looking to purchase phencyclidine (PCP) dipped cigarettes. Smith approached the van and spoke with its occupants. A bottle containing PCP was thrown from the van and Bert fired the rifle at Smith, striking him six times and killing him. Holguin began exiting the van to retrieve the drugs from Smith but was urged back by Bert who wanted to flee.

The van then sped away. At that time, a car driven by Santos Castro pulled up to the two girls who instructed him to follow the van and get its license number. Castro did so and returned later with the license number written on a piece of paper. He gave the paper to a deputy sheriff.

Deputy Sheriff Zabala was assigned to investigate Smith's murder. On September 12, Zabala proceeded to 1270 East 46th Street, an area considered to be 38th Street gang territory, to look for gang activity and vehicles which may have been involved in Smith's murder and unrelated shootings. Zabala saw a vehicle he identified as a red Monte Carlo which attracted his interest. Holguin was with four other male Latins near the car, drinking alcohol.

When Zabala made a second pass of the area he saw a van parked in Holguin's driveway which matched the description of the van used in Smith's murder. When Zabala returned to the group of men, two had fled down an alley.

Zabala questioned the remaining men as to the ownership of the Monte Carlo. Holguin volunteered he owned the van. Zabala subsequently arrested Holguin.

Holguin was advised of his Miranda (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) rights which he voluntarily waived. He then confessed to driving the van during Smith's murder. Holguin also stated he intended to shoot or kill someone when he left with Bert to look for rival gang members.

At the direction of a deputy district attorney, two deputies reinterviewed Holguin on September 16 to determine whether he intended to kill someone when he left with Bert. Holguin was again advised of his constitutional rights which he voluntarily waived. Holguin told the deputies he intended to kill someone when he left with Bert. He also stated when he saw Smith, he wanted to take his drugs, then kill him.

During this interview, Holguin confessed to the shooting involving Luna. Holguin also told the deputies he had been with Bert other times when Bert killed other people. Finally, Holguin stated he had killed three other people.

Holguin was charged in an information with the murder of Jose Smith (count I). (Pen. Code, § 187, subd. (a).) Count I further alleged a principal was armed with a firearm within the meaning of Penal Code section 12022, subdivision (a). Holguin was also charged with the attempted murder of Luna (count II). (Pen. Code, §§ 187, subd. (a), 664.) Count II further alleged a principal was armed with a firearm within the meaning of Penal Code section 12022, subdivision (a).

Holguin pled not guilty and moved to suppress his confessions pursuant to Penal Code section 1538.5. Holguin argued, inter alia, Deputy Zabala unlawfully detained him while ascertaining the ownership of the van. The trial court conducted an evidentiary hearing on this motion. The evidence adduced at that hearing is as follows.

Deputy Zabala, the arresting deputy, was assigned to the sheriff department's investigative unit which handles crimes involving gang activity. He worked patrol in gang areas for seven years and received specialized training regarding gangs.

While investigating the Smith murder, Florencia gang members told Deputy Zabala the gang violence arose from gang members living at 1277 46th Street.

On September 11, Deputy Zabala received a description of the van used in the Smith murder along with its license number 941ZFD. This description matched the vehicle described in the Luna shooting which Deputy Zabala was also investigating. Deputy Zabala was told the Luna shooting involved the 38th Street gang. He also knew Luna was a member of the Florencia gang.

Deputy Zabala also learned that day of another murder involving a red Monte Carlo which purportedly was perpetrated by members of the 38th Street gang.

On September 12, Deputy Zabala and another deputy drove to the address identified by the Department of Motor Vehicles as that of the owner. The deputies were unable to locate the address. They then drove to the area described by the Florencia gang members as the source of the gang violence. As the deputies drove eastbound on 46th Street, Deputy Zabala observed

five male Latins standing around what he believed was a red Monte Carlo parked near 1277 46th Street.

Zabala concluded the men were gang members based upon their attire and tattoos. Holguin was one of the five men and he appeared to be drinking alcohol from a wine bottle.

Zabala also saw an orange/yellow van bearing the license number 941ZFD parked in the driveway of another house approximately 50 feet away from the men.

Zabala made a U-turn at the next intersection and returned to where the men were standing. Two of the men fled down an alley. Zabala then detained the remaining three men, patting them down for weapons.

Zabala asked the men to tell him who owned the red vehicle. Holguin volunteered he owned the van parked in the driveway. Holguin also stated he purchased the van two weeks ago. Deputy Zabala saw a man walking out of the driveway where the van was located. Holguin identified the man as his brother. Deputy Zabala asked the man who owned the van. The man identified Holguin as the owner and sole driver. Deputy Zabala then spoke with a woman who was standing on the porch. The woman identified herself as Holguin's mother and told the deputy she purchased the van for her son. She confirmed only Holguin drove the van.

Deputy Zabala then arrested Holguin and brought him to the sheriff's station where he was turned over to the investigating officer.

The trial court denied Holguin's Penal Code section 1538.5 motion. The trial court severed Holguin's case from his codefendant Bert. The trial was before a jury. Holguin rested without presenting any witnesses. The jury found Holguin guilty on both counts and further found the enhancement allegations to be true.

The trial court, after weighing one mitigating factor against several aggravating factors, sentenced Holguin to the upper term of 25 years to life on count I plus an additional year for the Penal Code section 12022, subdivision (a) enhancement. The trial court sentenced Holguin to the upper term of nine years on count II and an additional year for the section 12022, subdivision (a) enhancement. The sentences were to rule consecutively. Holguin timely appealed.

I. *The Trial Court Properly Denied Holguin's Penal Code Section 1538.5 Motion.*

 Holguin argues he was illegally detained and, therefore, the trial court erred in denying Holguin's Penal Code section 1538.5 motion to suppress his confession. We disagree.

 The governing standard of review is twofold: The trial court's factual findings relating to the challenged detention, whether express or implied, must be upheld if they are supported by substantial evidence. However, the appellate court exercises its independent judgment to determine whether the detention was constitutionally reasonable as measured by the facts found by the trial court. (*People* v. *Loewen* (1983) 35 Cal.3d 117, 123 [196 Cal.Rptr. 846, 672 P.2d 436].)

 A detention is constitutionally reasonable if the circumstances known or apparent to the detaining officer include " 'specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation], to suspect the same criminal activity and same involvement by the person in question.' " (*People* v. *Aldridge* (1984) 35 Cal.3d 473, 478 [198 Cal.Rptr. 538, 674 P.2d 240].)

 Here, Deputy Zabala's detention of Holguin was based upon a number of factors. Deputy Zabala drove to a specific area identified by informants as the area from which the gang shootings between the 38th Street gang and the Florencia gang arose. When he arrived, he identified a red vehicle resembling the one used in a murder. Holguin and others were gathered around that vehicle. Using his training and expertise in gangs, and based upon their attire and tattoos, Deputy Zabala was able to identify the men gathered around the red vehicle as gang members. Further, located only 50 feet away was a van matching the description of the one used in the Smith murder. When Deputy Zabala made his U-turn and returned to the car, two men fled down an alley. Finally, he observed Holguin drinking alcohol in public, which is a misdemeanor. (L. A. Mun. Code, § 41.27, subd. (c).)[2]

---

[2] Holguin argues Deputy Zabala merely assumed Holguin was drinking. However, Deputy Zabala's testimony was not entirely clear on this issue. While at one point Deputy Zabala stated he could not categorically declare he saw Holguin drinking, he also testified it appeared to him Holguin was drinking from the wine bottle. Since the evidence is in conflict on

Holguin contends the fact the area was frequented by gang members does not justify the detention. However, this is not a case where the officer simply detains someone who is within a high crime area. (See, e.g., *People* v. *Aldridge, supra,* 35 Cal.3d at pp. 478-479; *In re Tony C.* (1978) 21 Cal.3d 888, 897 [148 Cal.Rptr. 366, 582 P.2d 957].) Deputy Zabala was specifically informed this location was the source of the violence directed at the Florencia gang. Thus, Deputy Zabala's assessment of Holguin's potential criminal involvement was not based upon Holguin's happenstance appearance in a high crime area but his congregation with other identifiable gang members at a location previously connected with specific criminal conduct.

Holguin further contends the fact two men fled from the deputies is not a proper factor. While Holguin is correct the deputies could not *solely* rely upon this factor to justify a detention, as we discussed above, there were *additional* factors upon which the deputies' detention of Holguin was based and which made the men's flight reasonably suspicious. (See *People* v. *Huntsman* (1984) 152 Cal.App.3d 1073, 1093 [200 Cal.Rptr. 89] [investigative stop permissible where fleeing defendant fails to stop when ordered to do so]; *People* v. *Lee* (1987) 194 Cal.App.3d 975, 982 [240 Cal.Rptr. 32] [detention permissible where officer observed, inter alia, defendant flee following warning from another that officer was approaching]; compare *People* v. *Washington* (1987) 192 Cal.App.3d 1120, 1128 [236 Cal.Rptr. 840] [where defendant detained solely because he fled when police officers approached, detention held unlawful].)

As respondent properly notes, the facts here are analogous to those found in *In re Stephen L.* (1984) 162 Cal.App.3d 257 [208 Cal.Rptr. 453]. There, the Court of Appeal held the police officer's detention of certain gang members to investigate possible vandalism was permissible based upon the gang members' proximity to a wall containing graffiti painted within a day or so, the graffiti contained slogans associated with that specific gang, and the gang members attempted to leave when the police officers approached. (*Id.* at pp. 259-260; see also *People* v. *Rodriguez* (1987) 196 Cal.App.3d 1041, 1046-1048 [242 Cal.Rptr. 386] [police had reasonable suspicion to detain defendant based upon relationship to vehicle used in killing, gang rivalry and recent gang-related criminal activity and general description of assailant]; *In re Hector R.* (1984) 152 Cal.App.3d 1146, 1151, 1153 [200 Cal.Rptr. 110] [police officers properly detained gang members based upon curfew violation and concern about gang activity].)

As the facts discussed above indicate, the deputies here had even a stronger basis for detaining Holguin and the other two men. The trial court, therefore, properly denied Holguin's motion to suppress.

---

this issue, we must assume the trial court resolved the conflict in favor of the prosecution and concluded Holguin was drinking in public.

## II. *The Jury Was Properly Instructed.*

■ Holguin argues the trial court erroneously instructed the jury on lying-in-wait because there was no evidence to show physical concealment. This is incorrect.

As respondent properly notes, physical concealment is not an essential element of lying-in-wait. Although the cases were at one time in conflict on this issue, the Supreme Court clarified in its recent decision of *People v. Morales* (1989) 48 Cal.3d 527, 554-555 [257 Cal.Rptr. 64, 770 P.2d 244], "physical concealment from, or an actual ambush of, the victim is not a necessary element of the offense of lying-in-wait murder. . . . [¶] 'It is sufficient that a defendant's true intent and purpose were concealed by his actions or conduct. It is not required that he be literally concealed from view before he attacks the victim. . . .'" (Accord *People v. Berberena* (1989) 209 Cal.App.3d 1099, 1105 [257 Cal.Rptr. 672].)

Thus, in *People v. Morales,* the Supreme Court concluded a lying-in-wait instruction was appropriate where the defendant, while riding in the back-seat of a car, concealed his intent to murder the victim who was sitting in the front seat until the car reached an isolated area. (48 Cal.3d at p. 555.)

Here, the evidence supports a finding Holguin concealed his true intent and waited and watched for the right moment to murder his victim. After first spying Smith walking down the street, Holguin drove the van ahead of Smith, turned off its lights and waited for his approach. When Smith was parallel to the van, he was called closer by an inquiry concerning the purchase of drugs. Holguin's true intent to murder Smith was concealed throughout. The trial court, therefore, properly instructed the jury on lying-in-wait.

## III. *The Trial Court Did Not Err in Refusing to Consider Holguin's Initial Confession of Guilt as an Acknowledgment of Wrongdoing for Purposes of Mitigation.*

■ Holguin argues the trial court erroneously failed to consider his initial confession of guilt as an acknowledgment of wrongdoing for purposes of mitigation. (Cal. Rules of Court, rule 423(b)(3).) We disagree.

■ The trial court is not required to set forth its reasons for rejecting a mitigating factor. (*People v. White* (1981) 117 Cal.App.3d 270, 280 [172 Cal.Rptr. 612]; *People v. Reid* (1982) 133 Cal.App.3d 354, 371 [184 Cal.Rptr. 186].) Further, unless the record affirmatively indicates otherwise, the trial court is deemed to have considered all relevant criteria, including

any mitigating factors. (Cal. Rules of Court, rule 409; *People v. White, supra,* 117 Cal.App.3d at p. 280.)

 Here the record reflects the trial court read Holguin's statement of circumstances in mitigation which argued his confession constituted an acknowledgment of wrongdoing. The trial court, by later concluding the only mitigating factor was Holguin's lack of record, apparently rejected the confession as a mitigating factor. It was within its discretion to do so.

California Rules of Court, rule 423(b)(3) provides a factor in mitigation is "[t]he defendant voluntarily acknowledged wrongdoing prior to arrest or at an early stage of the criminal process." Where circumstances indicate the acknowledgment is equivocal, it will not be considered a mitigating factor. (See *People v. Gaskill* (1980) 110 Cal.App.3d 1, 5-6 [167 Cal.Rptr. 549].)

Although there is a dearth of authority on when an acknowledgment of guilt is sufficiently unequivocal to constitute a mitigating factor, a review of those cases where the trial court has found such an acknowledgment reveals that in every instance but one the acknowledgment has been in the form of a guilty plea. (See, e.g., *People v. Fields* (1984) 159 Cal.App.3d 555, 562, 568 [205 Cal.Rptr. 888]; *People v. Williams* (1984) 157 Cal.App.3d 145, 155 [203 Cal.Rptr. 562]; *People v. Goldberg* (1983) 148 Cal.App.3d 1160, 1162, 1163 [196 Cal.Rptr. 470]; *People v. Swanson* (1983) 140 Cal.App.3d 571, 573, 574 [189 Cal.Rptr. 547].)[3] Even then, the Court of Appeal has concluded a guilty plea resulting from a plea bargain is not a sufficient acknowledgment of guilt to constitute a mitigating factor since the admission is only to receive a benefit from the prosecution. (See *People v. Burg* (1981) 120 Cal.App.3d 304, 306-307 [174 Cal.Rptr. 491].)

Here, Holguin confessed to police officers. Nonetheless, rather than acknowledging his wrongdoing during any part of the judicial proceeding, Holguin proceeded to trial after pleading not guilty. ██ █ This action clearly constitutes an equivocation of any acknowledgment of wrongdoing and, thus, the trial court did not err in refusing to consider the confession a mitigating factor.[4]

---

[3] The one exception involved a defendant who apparently acknowledged her guilt but proceeded to trial on a defense of insanity. (*People v. Burney* (1981) 115 Cal.App.3d 497, 502, 505 [171 Cal.Rptr. 329].)

[4] Holguin suggests the refusal to consider his confession a mitigating factor somehow impedes upon his right to a jury trial. This is incorrect. We are concerned here only with factors which affect sentencing. A trial court no more infringes upon a defendant's right to jury trial when it treats a not guilty plea as an equivocation of his acknowledgment of wrongdoing than when it aggravates a sentence based upon a charged offense upon which the jury hung. (See *People v. Hall* (1988) 199 Cal.App.3d 914, 922 [245 Cal.Rptr. 458]; *People v. Fulton* (1970) 92 Cal.App.3d 972, 976 [155 Cal.Rptr. 327].)

IV. *Any Error in Considering Holguin's Use of a Minor While Committing the Crimes Was Nonprejudicial.*

■ Holguin argues we should remand the case for resentencing because the trial court erroneously considered Holguin's use of a minor as one of the aggravating factors articulated for sentencing Holguin to the upper term on count II. We disagree.

The mere fact a trial court erroneously relies upon certain factors in imposing an upper term does not per se require reversal. Reversal is only required where there is a reasonable probability the trial court would sentence the defendant differently absent the erroneous factors. (*People* v. *Dreas* (1984) 153 Cal.App.3d 623, 636-637 [200 Cal.Rptr. 586].) Thus, where the trial court has stated several factors warranting the upper term, and only some of those factors are erroneous, the sentence is generally affirmed. (See, e.g., *People* v. *Burrell-Hart* (1987) 192 Cal.App.3d 593, 601 [237 Cal.Rptr. 654]; *People* v. *Dreas, supra,* 153 Cal.App.3d at p. 636; *People* v. *Hurley* (1983) 144 Cal.App.3d 706, 713-714 [192 Cal.Rptr. 805].) Indeed, even one valid factor is sufficient to justify the upper term. (*Ibid.*; *People* v. *Piceno* (1987) 195 Cal.App.3d 1353, 1360 [241 Cal.Rptr. 391].)

Here the trial court set forth several factors which support imposing the upper term. Among these factors was that Holguin's conduct "was extremely dangerous to others. In fact, you shot—set out the situation where you shot shots fired into a group of people who were simply minding their own business is really incomprehensible and it's dangerousness." The fact a crime involved great violence or threat of great bodily harm is a proper factor upon which to aggravate a sentence. (Cal. Rules of Court, rule 421(a)(1).)

The trial court also considered Holguin's lack of remorse another aggravating factor warranting imposition of the upper term. Lack of remorse may be used as a factor to aggravate under California Rules of Court, rule 408 unless the defendant has denied guilt and the evidence of guilt is conflicting. (See *People* v. *Key* (1984) 153 Cal.App.3d 888, 901 [203 Cal.Rptr. 144]; *People* v. *Brady* (1984) 162 Cal.App.3d 1, 4 [208 Cal.Rptr. 21], fn. 2.) Here, the evidence of guilt was overwhelming. Further, Holguin confessed to participating in the attempted murder. Under these circumstances, the trial court could properly consider lack of remorse an aggravating factor to enhance the sentence.

Since either of these factors was sufficient alone to aggravate the sentence, we cannot conclude on the record here the trial court would have sentenced

Holguin differently had it not considered whether a minor was involved in the crime. Accordingly, any alleged error was harmless.

DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Woods (Fred), J., concurred.

Appellant's petition for review by the Supreme Court was denied November 30, 1989.