**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Charles Jerome WILSON, Defendant–Appellee.**

**No. 89SA186.**

Supreme Court of Colorado, En Banc.

Dec. 18, 1989.

James F. Smith, Dist. Atty., Steven L. Bernard, Chief Trial Deputy, and Michael J. Milne, Sr. Deputy Dist. Atty., Brighton, for plaintiff-appellant.

David F. Vela, Colo. State Public Defender, and William Sublette, Deputy State Public Defender, Brighton, for defendant-appellee.

Justice ERICKSON delivered the Opinion of the Court.

This is an interlocutory appeal by the prosecution pursuant to C.A.R. 4.1. The defendant, Charles Jerome Wilson, was charged with possession of crack cocaine, a schedule II controlled substance, in violation of section 12–22–310, 5 C.R.S. (1989 Supp.), and section 18–18–105, 8B C.R.S. (1989 Supp.). The defendant filed a motion to suppress physical evidence and his statements to the police at the time of his arrest on October 21, 1988. After conducting a full evidentiary hearing, the trial judge granted the motion and suppressed the evidence. We affirm the order of the trial court.

On October 21, 1988, the Aurora Police Department was conducting a reverse sting operation in the 1500 block of Lima Street by selling imitation crack cocaine to unsuspecting customers in the area and then arresting them. The Aurora police, for

two weeks prior to October 21, 1988, had received a number of complaints indicating that crack cocaine was being openly sold in front of the apartment building at the corner of East Sixteenth Avenue and Lima Street. The reverse sting operation was instituted to prevent further drug dealing in the area.

Four police officers were engaged in the operation and they had advised citizens in the area that they should not contact customers or any of the undercover officers during the time that the sting operation was being conducted. A woman known only to the police as Ryder, and believed to be the sister of a drug dealer, had been warned that if she interfered with the operation she would be arrested. She was sitting thirty to forty yards away when three men approached the area. Ryder walked toward the three men and when she contacted them the defendant left the group and ran through an alley between Lansing and Lima Streets. Ryder went east by herself and the two other men continued walking east on Sixteenth Avenue. The police gave chase when they saw the defendant run. As their car approached the defendant, he stopped running, began walking briskly, and then stopped. Officer Stanfill, one of the participants in the sting operation, thought he recognized the defendant as a drug dealer. Officer Stanfill and an Officer Anderson got out of the police car and Anderson approached the defendant from behind and used a low profile Koga-type technique which was designed for self-protection to frisk the defendant. He felt a hard substance in the defendant's front pocket and he reached inside the pocket and turned it inside out. He discovered some paper items and a plastic bag containing several small rocks of crack cocaine which were about the size of four peas. After the crack cocaine was found, the defendant was asked for identification and arrested for possession of a controlled substance.

Following the evidentiary hearing, the trial court ordered suppression of the crack cocaine and commenced its analysis of the reasons for suppression by setting out the provisions of section 16–3–103, 8A C.R.S. (1986), which provide:

**Stopping of suspect.** (1) A peace officer may stop any person who he reasonably suspects is committing, has committed, or is about to commit a crime and may require him to give his name and address, identification if available, and an explanation of his actions. The stopping shall not constitute an arrest.

(2) When a peace officer has stopped a person for questioning pursuant to this section and reasonably suspects that his personal safety requires it, he may conduct a pat-down search of that person for weapons.

The court recognized that, pursuant to the statute, a peace officer may stop any person he reasonably suspects is committing, has committed, or is about to commit a crime, and may require him to give his name and address and an explanation of his actions. Before he was stopped, the actions of the defendant consisted of walking down the street with two other individuals, being contacted by a person who resided in the immediate area, and then turning and running in the opposite direction.

The trial court concluded that the actions of the defendant were not such as to create a reasonable suspicion that a crime had been, would be, or was being committed. Officer Stanfill was not aware of what crime might have been committed at the time the contact took place other than the fact that he felt that the defendant may have been involved in some narcotics transaction. Officer Anderson stated that, after feeling the three or four particles of crack, he believed that it was necessary for his own personal safety and protection to turn the pocket inside out. The trial court indicated, however, that there had to be some reason for the officer to believe that he was in danger.

The trial court pointed out that there was no way to explain how three rocks of cocaine can in any way be equated to a weapon or the way that a weapon would feel. Because of the size of the objects in question, the trial court found that there was no reasonable belief that a weapon was in the

defendant's pocket. In addition, before the crack was found, the police officers did not have probable cause to arrest the defendant. Even assuming that the original stop was valid, the only intrusion that would have been proper was a pat down for weapons, and the police conduct exceeded what was necessary for such a pat down. Because the stop itself was invalid, and the scope and character of the intrusion after the stop was unreasonable, the crack was suppressed. We do not disagree with the analysis of the trial court.

The facts in this case are even less supportive of the stop that was conducted than the action of the police officers in *People v. Thomas*, 660 P.2d 1272, 1274–75 (Colo. 1983), where we said:

> Three conditions must exist before a person may be subjected to an investigative stop: (1) there must be a specific and articulable basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to take place; (2) the purpose of the stop must be reasonable; and (3) the scope and character of the stop must be reasonably related to its purpose. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *People v. Tate*, 657 P.2d 955 (Colo.1983); *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971). The reasonable suspicion necessary for an investigative stop must be judged against an objective standard—that is, whether there were specific and articulable facts known to the officer, which taken together with rational inferences from these facts, created a reasonable suspicion of criminal activity to justify the intrusion into the defendant's personal security. *E.g., Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Terry v. Ohio, supra*. In determining whether this objective standard

has been met the critical focus necessarily centers upon the facts known to the officers immediately prior to the intrusion. Facts uncovered after a chase begins do not enter into the constitutional equation for reasonable suspicion.....

The fact that the defendant ran in the opposite direction from that in which his companions were going does not provide a basis for the police to pursue and search Wilson. The facts known to the officers when they commenced their chase did not satisfy the threshold constitutional requirement of reasonable suspicion.

In our view, the trial court correctly found that the scope and character of the intrusion was unreasonable because it exceeded a pat down for weapons. This result is controlled by our decision in *People v. Ratcliff*, 778 P.2d 1371 (Colo.1989). Because the officer could point to no "specific and articulable facts supportive of a reasonable suspicion" that the contents of the defendant's pocket "pose[d] a danger to himself or others nearby," *id.* at 1380, the scope of the intrusion was not reasonably related to its purpose. Therefore, the crack cocaine found inside the pocket was properly suppressed. Since probable cause to arrest the defendant was based on an illegal search, evidence obtained directly as the result of the arrest must also be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The trial court's findings are supported by the facts in the record and are not clearly erroneous, and thus may not be disturbed on appeal. *People v. Quezada*, 731 P.2d 730, 732 (Colo.1987); *People v. Raffaelli*, 647 P.2d 230, 236 (Colo.1982). Accordingly, we affirm the suppression order of the trial court.