The **PEOPLE** of the State of Colorado, Plaintiff–Appellant,

v.

Garland A. **RAHMING,** Defendant–Appellee.

No. 90SA114.

Supreme Court of Colorado, En Banc.

Sept. 10, 1990.

James C. Sell, Chief Deputy Dist. Atty., Robert R. Gallagher, Jr., Dist. Atty., Philip M. Smith, Deputy Dist. Atty., Englewood, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Steven R. Gayle, Deputy State Public Defender, Englewood, for defendant-appellee.

Justice VOLLACK delivered the Opinion of the Court.

In this interlocutory appeal[1] the People challenge the order of the Arapahoe County District Court suppressing evidence discovered by an officer of the Aurora Police Department (the officer) in a search of the automobile driven by the defendant, Garland Rahming. The officer conducted the search of the automobile during an investigative detention of the defendant and two other occupants of the car the defendant was driving. The district court held that the facts of this case did not give the officer a reasonable suspicion that the occupants of the car were involved in criminal activity. We affirm.

### I.

On January 11, 1990, the People charged defendant Garland Rahming by felony complaint with one count of second degree burglary, § 18–4–203, 8B C.R.S. (1986), and one count of theft, § 18–4–401, 8B C.R.S. (1986 & 1989 Supp.). Prior to trial the defendant moved to suppress the fruits of any search of the vehicle he was driving when he was stopped by the officer. The district court held a hearing on the defendant's motion to suppress. The officer's testimony at the pretrial hearing disclosed the following.

The officer had been a police officer with the Aurora Police Department for three and one-half years. He had not been formally trained in gang activities, but he had watched videotapes prepared by the Gang Intervention Unit of the Aurora Police Department, and he had some knowledge of gang activities based on his experience as an Aurora police officer. He testified that the chosen attire of Crips street gang members includes a blue coat, a blue-checkered coat, or a black Los Angeles Raiders team jacket. According to the officer, members of the Crips wear blue or black hats with either a Los Angeles Raiders insignia or "something with a C," and wear their pants so that they hang loosely on their hips, "halfway down their buttock[s]."

On January 6, 1990, the officer was in his marked police car patrolling the parking lot of an apartment complex from which he routinely received about one call a night.

---

1. C.A.R. 4.1(a), 7B C.R.S. (1984), authorizes the state to file an interlocutory appeal in this court from a ruling of a district court granting a motion under Crim.P. 41(e) and (g) and Crim.P. 41.1(i) made in advance of trial by the defendant for return of property and to suppress evidence, or granting a motion to suppress an extra-judicial confession or admission. C.A.R. 4.1(a) requires the state to certify to the judge who granted the motion, and to this court, that the appeal is not taken for purposes of delay, and that the evidence is a substantial part of the proof of the charges pending against the defendant. The People filed the proper certification in this case. *People v. Mendoza–Rodriguez,* 790 P.2d 810, 813 (Colo.1990).

The officer was travelling north through the parking lot with his lights off when he noticed three young black males walking towards a car in the apartment complex parking lot. The individuals were outside of an 18–unit apartment building which is the home of the "MCGs," who are leaders of the Bloods street gang, the rival of the Crips gang. The previous week the officer had arrested residents of the building in connection with a drive-by shooting and an assault on a member of the Crips gang.

The defendant was wearing tennis shoes, dark pants, and, in the officer's words, "a gray and white—gray and white and blue checkered coat, a padded quilted type lumberjack coat." One of the other two individuals was wearing a blue hat, a black Los Angeles Raiders coat, black jeans, and white BK, or, in the officer's words, "Blood Killer," tennis shoes with black strings in them. The remaining individual was wearing a sweater with a blue torso, white arms, and a yellow stripe. The officer could not remember what else that individual was wearing, and agreed with defense counsel that the sweater was a "typical sports sweater for a young person to wear." There were not any bulges in the clothing of the individuals, or any other indication that any of them were carrying weapons.

The three individuals noticed the officer's car in the parking lot. Two of them turned and ran to the entrance of the apartment building. The defendant remained where he was, and stood by a tree watching the officer drive by. The officer continued down the street and parked his patrol car in an alley, where another tree concealed his location. The defendant and the two other individuals then proceeded to their car at a fast pace. The defendant drove the car down the street and turned onto Colfax Avenue.

The officer followed the car down Colfax. The defendant did not commit any traffic infractions. The defendant pulled into a 7–Eleven parking lot, and the officer followed the car into the parking lot and activated the lights on his vehicle. The officer radioed for assistance. After an-

other officer arrived, the officer notified the police dispatcher of the license plate number of the car. The dispatcher determined that the car belonged to another individual who had given the defendant permission to borrow the car.

The officer directed the defendant out of the car and conducted a pat-down search of the defendant for weapons. The search did not reveal any weapons. The defendant then consented to a search of the trunk of the car, and the other individuals consented to searches of their clothing. These searches uncovered a black-and-white Magnavox television set and several items of gold jewelry. The officer then learned from the police dispatcher that the car may have been involved in a burglary which had occurred earlier that evening in south Aurora, which is approximately 30 to 40 blocks from the location where the officer stopped the defendant. The officer subsequently determined that the jewelry and the black-and-white television had been taken in the south Aurora burglary.

The People charged the defendant with second degree burglary and theft. After conducting a suppression hearing, the district court ruled that the officer did not have a reasonable suspicion that the defendant was involved in criminal activity. The district court granted the defendant's motion to suppress.

## II.

### A.

■ Under narrowly defined circumstances a police officer may make a limited intrusion into an individual's personal security on less than probable cause. *People v. Savage,* 698 P.2d 1330, 1334 (Colo.1985); *see also Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968); *Stone v. People,* 174 Colo. 504, 509–10, 485 P.2d 495, 497 (1971). The circumstances under which an officer may detain an individual are limited because the individual interest at stake " 'is far from insignificant: it is the right of every person to enjoy the use of public streets, buildings, parks and other conveniences without un-

warranted interference or harassment by agents of the law.'" *People v. Aldridge*, 35 Cal.3d 473, 478, 198 Cal.Rptr. 538, 541, 674 P.2d 240, 243 (1984) (quoting *In re Tony C.*, 21 Cal.3d 888, 893, 148 Cal.Rptr. 366, 368, 582 P.2d 957, 959 (1978)). Three conditions must exist before an individual may be subjected to an investigative stop and limited search of his person: (1) there must be an articulable and specific basis in fact for suspecting that criminal activity has taken place, is in progress, or is about to occur; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose. *People v. Wilson*, 784 P.2d 325, 327 (Colo.1989); *People v. Mascarenas*, 726 P.2d 644, 645 (Colo. 1986); *Savage*, 698 P.2d at 1334.

■ "The existence of these conditions must be judged against an objective standard that takes into consideration the facts and circumstances known to the officer at the time of the intrusion and evaluates the purpose, scope, and character of the intrusion in light of those facts." *Id.* at 1334–35. "'In determining whether this objective standard has been met the critical focus necessarily centers upon the facts known to the officers immediately prior to the intrusion.' Facts uncovered after a chase begins do not enter into the constitutional equation for reasonable suspicion.'" *Wilson*, 784 P.2d at 327 (quoting *People v. Thomas*, 660 P.2d 1272, 1275 (Colo.1983)). In evaluating the factors upon which the People rely to justify the investigative detention, we defer to the trial court's findings of historical fact, which we will not overturn if supported by competent evidence in the record. *People v. Quezada*, 731 P.2d 730, 732 (Colo.1987). "An ultimate conclusion of constitutional law that is inconsistent with or unsupported by evidentiary findings, however, is subject to correction by a reviewing court, as is a court's application of an erroneous legal standard to the facts of the case." *Id.* at 732–33.

## B.

■ This case concerns the first of the three conditions which must be satisfied to justify an investigative detention: whether there were specific and articulable facts known to the officer which, taken together with rational inferences from these facts, created a reasonable suspicion of criminal activity which justified the intrusion into the defendant's personal security at the time of the stop. *Mascarenas*, 726 P.2d at 645; *see also United States v. Sokolow*, —— U.S. ——, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). "The concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983)). "'The process does not deal with hard certainties, but with probabilities.'" *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). Factors which are not by themselves proof of illegal conduct may give a police officer reasonable suspicion, and "there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity is afoot." *Sokolow*, 109 S.Ct. at 1586. However, an officer who conducts an investigative detention must do so on the basis of more than an "'inchoate and unparticularized suspicion or "hunch."'" *Id.* at 1585 (quoting *Terry v. Ohio*, 392 U.S. at 27, 88 S.Ct. at 1883).

The People seek to justify the investigative detention of the defendant based upon the following facts: (1) the presence of three young males dressed in a manner which led the officer to infer that they were members of the Crips gang; (2) that two of the youths ran to the entrance of the apartment building upon observing the officer's vehicle; (3) that the apartment building in question was the residence of several leaders of the Bloods gang; (4) that the previous week the officer had arrested residents of that building in connection with a drive-by shooting and an assault on a member of the Crips gang; and (5) that the apartment complex in question is an area characterized by a relatively high crime rate. The facts found by the trial court, and supported by the evidence in this case, did not create a reasonable suspicion

to warrant an investigative detention of the defendant. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883. In reviewing the circumstances the People rely upon to justify the investigative detention, we note that the officer did not detain the defendant in the vicinity of the apartment complex characterized as a "high crime area" and as the residence of leaders of the Bloods gang. The defendant had driven in a lawful manner to a 7–Eleven store in a different area.

■ We first consider whether an individual's attempt to avoid contact with a police officer constitutes reasonable suspicion for a detention. An individual's attempt to avoid coming in contact with a police officer does not, without more, justify an investigative detention of the individual. *Wilson*, 784 P.2d at 327; *Thomas*, 660 P.2d at 1275. In *Thomas*, 660 P.2d at 1275, we stated that,

> [v]iewed from a purely objective level of observation, the act of running a short distance to a nearby building, with or without one's hand in the pocket, is an action so universal in character that one can only speculate as to its motivating source. Even when the act of running is motivated by an effort to avoid contact with the police, it still does not constitute the type of specific and articulable fact that is constitutionally sufficient to justify a stop.

In *Aldridge*, 35 Cal.3d at 478, 198 Cal.Rptr. at 540, 674 P.2d at 242, the California Supreme Court held that an investigative detention was not justified by the fact that it was nighttime, that the incident took place "in an area of continuous drug transactions," and that the defendant and his companion apparently sought to avoid the police.

The officer placed great weight upon the fact that the individuals outside of the apartment building were dressed as members of the Crips street gang. This claim is weakened by the fact that the officer's testimony at the pretrial hearing revealed that only one of the three individuals he observed was dressed in what might be called the distinctive uniform of the Crips gang, and that that individual was not the defendant. However, even if the three individuals observed by the officer were unquestionably dressed as gang members, that fact, whether considered alone or in combination with the facts of this case, would not have justified the officer's detention of the defendant. Courts upholding investigative detentions of suspected gang members have done so on the basis of facts in addition to their appearance which created a reasonable and articulable suspicion that criminal activity "[had] occurred, [was] taking place, or [was] about to take place." *Wilson*, 784 P.2d at 327.

In *United States v. Flett*, 806 F.2d 823, 828 (8th Cir.1986), the court held that the pat-down search of the defendant was justified by the defendant's presence in the home of a known gang member charged with a narcotic violation. In *United States v. Wheeler*, 800 F.2d 100, 103 (7th Cir. 1986), the court identified the following factors which justified the officer's investigative detention of the defendant: (1) a group of six or seven men entered a bar together; (2) the group initially behaved in a manner suggesting that they were "covering" the entrance; (3) some were recognized as members of the Outlaw Motorcycle gang; (4) some members of the group were wearing clothing with "Outlaw Motorcycle Club" printed on it; (5) some of the men had bulges in their clothing indicating the possibility of weapons; and (6) the Invaders, who frequented the bar, were hostile to the Outlaws, and a fight between the two gangs seemed likely. In *In re Hector R.*, 152 Cal.App.3d 1146, 1153, 200 Cal.Rptr. 110, 114 (1984), the court held that the detention of a Latino juvenile was justified by the fact that the juvenile and another Latino juvenile were with a black youth who had a knife on his belt and a small caliber handgun in his right hand. The detention was also justified by the fact that the two Latino youths gave conflicting statements when the officer asked them why they were with the black youth, the officer recognized both Latino youths as gang members from their attire, and as it was 10:30 p.m. the officer had probable cause to believe that the juveniles were

guilty of a curfew violation. *Id.* at 1151, 200 Cal.Rptr. at 112–13.

The facts found by the trial court in this case do not support an articulable suspicion that, at the time the officer stopped the defendant, criminal activity had occurred, was in progress, or was about to occur. Our holding is not altered by the fact that the officer observed the defendant and the two other individuals outside of a building in which several leaders of the Bloods lived, or the fact that the officer had recently arrested residents of that building for their alleged involvement in a drive-by shooting and an assault on a member of the Crips. The officer did not observe anything which suggested that the individuals in question were engaged in any kind of criminal activity involving the Bloods. In fact, the individuals did nothing to suggest that criminal activity was afoot. The suggestion, made by the officer at the hearing, that the individuals he observed may have been about to commit a drive-by shooting, constituted a "hunch," or an "inchoate and unparticularized suspicion." *Sokolow,* 109 S.Ct. at 1585.

Neither was the presence of these three individuals outside of an apartment building which was home to several recent arrestees sufficient to justify the detention of the defendant. "A history of past criminal activity in a locality does not justify suspension of the constitutional rights of everyone, or anyone, who may subsequently be in that locality." *Aldridge,* 35 Cal.3d at 479, 198 Cal.Rptr. at 540, 674 P.2d at 242.

The order of the district court is affirmed.