**Robert Keith HAMPE, Petitioner–Appellee,**

v.

**John TIPTON, Executive Director, Department of Revenue, State of Colorado; Motor Vehicle Division, State of Colorado; and Art Julian, Hearing Officer, Respondents–Appellants.**

No. 94CA0399.

Colorado Court of Appeals, Div. II.

May 4, 1995.

As Modified on Denial of Rehearing June 22, 1995.

Bader & Villanueva, P.C., Steven M. Feder, Denver, for petitioner-appellee.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Mark W. Gerganoff, Asst. Atty. Gen., Denver, for respondents-appellants.

Opinion by Judge BRIGGS.

The Department of Revenue appeals from the trial court judgment reversing its revocation of the driver's license of petitioner, Robert Keith Hampe, for driving with an excessive blood alcohol content. We reverse and remand the cause to the trial court for reinstatement of the administrative order.

After midnight on June 9, 1993, an Arapahoe County sheriff's deputy responded to a call to assist another officer who had stopped a vehicle. When the deputy arrived the officer was conducting a roadside sobriety test of a woman. He pointed out to the deputy a vehicle he had seen pull into an empty parking lot across the street.

The officer explained to the deputy that the driver of the vehicle (later identified as petitioner) had parked and turned off the headlights, apparently to watch the officers.

The deputy then observed the vehicle move out of the parking lot and toward them between two buildings, with its headlights still off. The vehicle stopped on a dirt road running toward the street, directly across from the officers, but back from the edge of the street. Its motor was running, parking lights on, headlights off.

The officer confirmed it was the same vehicle he had seen turn into the parking lot. Because of these suspicious activities and because of concern for their safety, the officer requested that the deputy investigate.

The deputy pulled up behind the vehicle with the overhead lights on the patrol car activated, approached on foot, and shined his spotlight on the driver. Petitioner was talking on a car phone. He seemed confused and disoriented in trying to talk on the phone, respond to the deputy, and watch the activities at the traffic stop. The deputy asked petitioner to hang up the phone.

Petitioner identified himself and explained that it was his wife involved in the roadside sobriety test. This reduced the deputy's suspicions. However, the deputy detected the odor of alcohol on petitioner's breath and observed that his eyes were watery and bloodshot, his speech slurred. Based on these observations, the deputy asked petitioner if he had been drinking. His initial reply was a denial, but then he admitted that he had. At that point the deputy requested that petitioner take a roadside sobriety test, which he failed.

Petitioner was charged with driving under the influence, pursuant to § 42–4–1202(1)(a), C.R.S. (1993 Repl.Vol. 17), and driving with excessive blood alcohol content, pursuant to § 42–4–1202(1.5)(a), C.R.S. (1993 Repl.Vol. 17). At the administrative hearing to determine whether his driver's license should be revoked under the authority of § 42–2–122.1, C.R.S. (1993 Repl.Vol. 17), petitioner challenged the validity of the investigatory stop. The hearing officer determined that the deputy did not have to describe what crime was about to be committed to justify the investigatory stop and concluded that the stop was proper.

Petitioner sought review in the district court, pursuant to § 42–2–122.1(9), C.R.S. (1993 Repl.Vol. 17). The district court reversed. It concluded that the officer's suggestion that petitioner's conduct was suspicious, without more facts, did not support an articulable suspicion of criminal activity, past, present, or future, and that the officer had acted on a "hunch" or an "inchoate and unparticularized suspicion." It therefore held that the investigatory stop exceeded constitutional authority.

On appeal, the Department of Revenue does not contest that the contact with petitioner constituted a seizure for purposes of constitutional analysis. It instead contends that the district court erred in holding that the deputy's investigatory stop constituted an unreasonable seizure under the Fourth Amendment. In the circumstances presented here, we agree.

■  An investigatory stop short of a traditional arrest may be authorized on less than probable cause without violating the Fourth Amendment. To justify this limited intrusion, three conditions must exist: (1) a police officer must have an articulable basis in fact for suspecting that criminal activity has occurred or is about to take place; (2) the purpose of the intrusion must be a reasonable one; and (3) its scope and character must be reasonably related to its purpose. *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971); *see People v. Rahming,* 795 P.2d 1338 (Colo.1990); *see also Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■  When a trial court makes the initial determination of whether an investigatory stop was reasonable, its ultimate conclusion of constitutional law is subject to correction by a reviewing court if it is inconsistent with or unsupported by evidentiary findings, as is the application of an erroneous legal standard to the facts of the case. However, in evaluating the factors relied upon to justify the investigatory stop, a reviewing court must defer to the trial court's findings of historical fact and will not overturn them if supported by competent evidence in the record. *People v. Rahming, supra.*

■ These same standards of review may appropriately be applied in this case to the initial findings and conclusions of the administrative hearing officer. *Cf. deKoevend v. Board of Education*, 688 P.2d 219 (Colo. 1984); *People ex rel. Woodard v. Brown*, 770 P.2d 1373 (Colo.App.1989); *see generally* J. Shechter, *De Novo Judicial Review of Administrative Agency Factual Determinations Implicating Constitutional Rights*, 88 Colum.L.Rev. 1483 (1988).

■ Suspicion of criminal activity, the first element in the *Stone* test, must be judged by an objective standard that takes into consideration the facts and circumstances known to the officer immediately prior to the investigatory stop. *People v. Rahming, supra.* A subjective and unarticulated hunch of criminal activity will not support the requirement that reasonable suspicion exists before the investigatory stop is made. *People v. Trujillo*, 773 P.2d 1086 (Colo.1989). However, there can be circumstances in which wholly lawful conduct may justify the suspicion that criminal activity is afoot. *People v. Rahming, supra.*

■ Circumstances commonly raising suspicions of criminal activity, at least when present in some combination, include the lateness of the hour, the character of the area, the reaction to the presence of the police, and whether a companion has been or is being arrested. *See generally* W. LaFave, *Search and Seizure* § 9(3) (2d ed. 1987); *see also Jeffreys v. United States*, 312 A.2d 308, 310 (D.C.App.1973) ("[T]he sight of a parked car in a residential neighborhood almost three hours after midnight with its headlights turned off and its motor running, was in itself something which vigilant police officers could well have deemed suspicious ... [and] the police would have been warranted in inquiring of the driver his identity and his business there."). While suspicions about a companion normally center on concern with possible involvement in the crime being investigated, concern with retaliatory actions by a companion acting suspiciously is no less reasonable or substantial. *Cf. People v. Sutherland*, 886 P.2d 681 (Colo.1994).

■ Petitioner stresses that the evidence established he was at least one hundred feet away from the police activity and that his wife testified she had told the officer conducting her roadside sobriety test, who was not present at the hearing, that it was her husband in the vehicle across the street. That information apparently had not been conveyed to the deputy before he began his investigation of petitioner.

However, in an isolated area late at night, a vehicle had turned into a deserted parking lot for a church and preschool. The vehicle was positioned to allow the officer conducting the traffic stop to be watched, and the vehicle was then moved and parked directly across the street from the police activities. The vehicle had been maneuvered to avoid attracting attention and positioned to avoid police scrutiny, with its motor running, on a dirt road leading toward the officers.

The officers at that point were vulnerable to whatever danger the occupant or occupants of that vehicle might pose. Knowledge that the woman who was initially stopped claimed that the driver of the vehicle was her husband may have reduced suspicion. However, the officers were not required to accept her statement without question.

Furthermore, the statement did not explain the driver's conduct and did not necessarily negate any concern that the driver or any other occupant of the vehicle was about to engage in criminal activity that would jeopardize the safety of the officers. If the driver were to have pulled forward, such movement would have been directly toward the officers, increasing rather than decreasing the potential threat.

The hearing officer found that any police officer who in these circumstances was not concerned with safety would be putting himself or herself in jeopardy and that a reasonable police officer would make a limited investigation to determine what was afoot. The evidence supports the findings of the hearing officer. We will therefore not disturb those findings. *See People v. Greer*, 860 P.2d 528 (Colo.1993); *see also Colorado State Board of Nursing v. Lang*, 842 P.2d 1383 (Colo.App.1992) (when conflicting inferences

are fairly possible, the reviewing court may not replace the choice of the finder of fact).

■ The second condition in determining whether the investigatory stop was justified is that its purpose must have been reasonable. Here, it is uncontested that the purpose was to identify the occupant or occupants of the vehicle, a purpose already addressed by our supreme court: "[W]hen an officer reasonably suspects that the person has committed a crime or is about to commit a crime and the officer has not identified the person [the officer] legally may stop [the suspect] to question him about his identity." *Stone v. People, supra,* 174 Colo. at 509, 485 P.2d at 497.

■ We must finally consider whether the scope and character of the investigatory stop were reasonably related to its purpose. Although in this case the Department does not contest that the encounter from the outset constituted an investigatory stop, *compare Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) *with Stone v. People, supra,* the intrusion on petitioner's rights was neither substantial nor greater than necessary in these circumstances. The deputy did stop behind petitioner's vehicle with his overhead lights activated and used a spotlight in approaching the vehicle. However, the overhead lights served to make his identity as a police officer obvious: his actions were consistent with recognition that investigatory stops involving vehicles are "especially fraught with danger to police officers." *See Michigan v. Long,* 463 U.S. 1032, 1047, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201, 1218 (1983).

After approaching the vehicle, the deputy did no more than make a routine preliminary request for information. It was only after the deputy detected signs of alcohol consumption that he asked petitioner if he had been drinking, which led to the roadside sobriety test and petitioner's arrest.

We have weighed the officers' legitimate concern for safety, aroused by petitioner's suspicious activities, against the extent of the intrusion involved in the investigatory stop. In light of the unique circumstances confronting the officers, we conclude the hearing officer correctly determined that the investigatory stop did not violate petitioner's constitutional right to be secure against unreasonable seizure.

The judgment is reversed, and the cause is remanded to the trial court for reinstatement of the administrative order.

CRISWELL, J., concurs.

ROY, J., dissents.

Judge ROY dissenting.

I respectfully dissent.

This is a driver's license revocation proceeding pursuant to § 42–2–122.1(1.5)(a)(I), C.R.S. (1993 Repl.Vol. 17) which authorizes the Department of Revenue to revoke the driver's license of any person it determines operated a motor vehicle when the level of alcohol in the person's blood or breath exceeds a statutory limit. I have concluded that the circumstances did not justify a stop of petitioner and, thus, the revocation of petitioner's driver's license is constitutionally infirm. I would, therefore, affirm the trial court in reversing the order of revocation.

The central issue is whether the officers had an adequate basis for stopping petitioner. An officer may stop and detain a person upon information constituting less than probable cause to arrest, that is, if he observes unusual conduct which in light of his experience leads him reasonably to conclude that criminal conduct may be afoot. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The rationale of *Terry* was adopted by our supreme court in *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971) in which the court held that:

> In order lawfully to detain an individual for questioning, (1) the officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime; (2) the purpose of the detention must be reasonable; and (3) the character of the detention must be reasonable when considered in light of the purpose.

*Stone v. People, supra,* 174 Colo. at 509, 485 P.2d at 497.

The first criterion was ultimately stated as: "[T]here must be an articulable and specific

basis in fact for suspecting that criminal activity has or is about to take place." *People v. Tate,* 657 P.2d 955, 958 (Colo.1983). It is with this first criterion that I am most concerned. The seizure in this case occurred when the deputy pulled up behind petitioner's vehicle and the petitioner was not free to leave. *See Terry v. Ohio, supra.*

Neither "probable cause" nor an "articulable and specific basis in fact for suspecting that criminal activity is afoot" clearly delineate a point at which an officer may have confidence that evidence obtained will be admissible. These matters must be dealt with on a case-by-case basis.

In the early morning hours of June 9, 1993, petitioner and his wife were separately driving home after a dinner during which both had consumed some alcohol. They were proceeding northbound on Colorado Boulevard in the vicinity of Arapahoe Road with petitioner in the lead. His wife's driving was observed as erratic by an officer of the Arapahoe County Sheriff's Office and he stopped her vehicle just north of Arapahoe Road.

Petitioner continued northbound and turned into the entrance to a church parking lot on the west side of Colorado Boulevard. He drove into the parking lot behind and to the west of the church, stopped his vehicle facing east, turned off his headlights, but left the parking lights on and engine running. A few minutes later, petitioner pulled forward onto a dirt driveway which ultimately led back to Colorado Boulevard between the church and an adjacent house. From this vantage point, between 100 and 200 feet away from the traffic stop, petitioner observed the roadside sobriety test administered by the officer and telephoned an acquaintance who was an on-duty policeman to seek advice.

Petitioner's wife, in response to inquiry, advised the officer who had stopped her that the driver of the vehicle stopped in the parking lot across the street was her husband and that he was waiting for her. A deputy responded to the scene to cover the officer and, shortly after arrival, was sent by the officer to contact petitioner. The officer completed the roadside sobriety test of petitioner's wife, which she passed, and released her.

The deputy approached petitioner's vehicle from the rear, turned on the overhead emergency lights, and illuminated petitioner's vehicle with a spotlight. The deputy testified that, from that time forward, petitioner was not free to leave. As he walked toward petitioner's vehicle, the deputy observed that petitioner was talking on the telephone, told him to hang up the phone, asked for driver's license, registration, and proof of insurance, and asked petitioner what he was doing there.

With respect to the reason for contacting petitioner, the relevant testimony was given by the deputy, who stated as follows:

[Deputy] We were on a traffic stop, Deputy Wunderlich was, this is not a well lit area. It is 12—it is after midnight. Traffic stops are dangerous to begin with and when you have another person in a darkened out vehicle who positions his vehicle in a manner so as to observe you presumably, that to me is suspicious. Accordingly that vehicle was contacted if for no other reason than to satisfy ourselves what he was doing in the area at the time.

. . . .

[Counsel] Okay. And other than sitting there on private property with parking lights on and examining or watching what you are doing, was there anything suspicious about what Mr. Hampe had done?

[Deputy] Well, just in my mind, you don't consider that suspicious?

[Counsel] Well, I said anything other than that, is there anything other than that?

[Deputy] No.

[Counsel] Now, and you believed it was suspicious because it was unusual; right?

[Deputy] Very unusual.

[Counsel] Okay. And (sic) but you didn't have any suspicions that he was committing a crime?

[Deputy] I had a suspicion that he may be about to.

[Counsel] What was he going to do?

[Deputy] I don't know.

[Counsel]  So, you didn't know if he was going to—

[Deputy]  *It is the element of not knowing that we wanted to satisfy ourselves as to exactly what his purpose was* for being with his engine running and the parking lights on and his headlights out facing us while we were on a traffic stop.

[Counsel]  Did you—

[Deputy]  *It aroused our suspicions and our curiosity* and just for no other reason than an officer safety standpoint clearly that by law—

[Counsel]  Let me ask you where in your report does it mention anything in here about officer safety?   ...

. . . .

[Deputy]  No, the words "officer safety" are not.   (emphasis added)

Based on this testimony, the hearing officer concluded that petitioner's conduct was suspicious and that officer safety was a sufficient basis upon which to stop him.

I certainly agree with the majority that a police officer can be, and too frequently is, a victim of criminal activity.  Therefore, the victim of the criminal activity, which the officer has articulable and specific basis in fact for suspecting is about to take place, may be the officer himself.

While I do not wish to engage in word games, put words in the officer's mouth, or mischaracterize the officer's testimony, I believe the officer chose his words carefully and testified candidly when he stated "[i]t is the element of not knowing that we wanted to satisfy ourselves as to exactly what his purpose was," and chose the word "curiosity." Perhaps of significance is the absence of any evidence in the record that the deputy took any precautions in addition to those normally taken in a traffic stop.

The totality of the evidence leads me to conclude that the officers had, if anything, an undifferentiated and non-specific concern for their own safety, or that criminal activity was afoot of which they were the potential victim. That undifferentiated and non-specific concern was, or should have been, substantially ameliorated when the officers were advised by petitioner's wife as to who was in the suspicious vehicle and the reason that person was observing the roadside sobriety test. The position of petitioner's vehicle and its distance from the roadside test were such that neither the vehicle nor its occupant constituted, without more, any immediate or direct threat to the officers' safety.  There is no evidence in the record that these events occurred in a "high crime area" or that there had been any reports of criminal activity in the vicinity.

In this instance, once the decision was made to contact petitioner, the officer placed both himself and petitioner in a compromising and potentially very dangerous situation. The officer approached an occupied vehicle at night in a relatively isolated location.  While precautions were undoubtedly appropriate under the circumstances and enhanced the safety of both parties, they also necessitated that an "investigatory stop" occur when an informal inquiry might have sufficed under other circumstances.

An officer may conduct a reasonable search in order to assure officer safety *after* a valid investigatory stop and renders any resulting evidence admissible.  *See Terry v. Ohio, supra; People v. Sutherland,* 886 P.2d 681 (Colo.1994); *People v. Carlson,* 677 P.2d 310 (Colo.1984).

*Terry,* indeed, dealt with a pat-down search predicated on concern for officer safety *after* a valid investigatory stop had been initiated on other grounds.  The holding in *Terry, supra,* 392 U.S. at 30, 88 S.Ct. at 1884–85, 20 L.Ed.2d at 911, stated:

> We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a

carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

However, conduct which is suspicious or merely engages the curiosity of an officer is not, without more, a valid basis for a stop. *People v. Thomas*, 660 P.2d 1272 (Colo.1983); *People v. Rahming*, 795 P.2d 1338 (Colo. 1990).

In *Thomas*, the defendant, who was known to the arresting officers, was observed in the parking lot of a commercial establishment. After making eye contact with the officers, the defendant started walking, then running, toward an adjacent structure which was occasionally used as a gambling establishment. The officers gave chase first in their vehicle and then on foot. As he ran, the defendant put his hand in his pocket and after entering the building was observed throwing away objects removed from his pocket which were later identified as balloons of cocaine. The defendant was arrested, charged with possession of cocaine, and the trial court suppressed the evidence. Our supreme court affirmed, stating in part:

> Viewed from a purely objective level of observation, the act of running a short distance to a nearby building, with or without one's hand in the pocket, is an action so universal in character that one can only speculate as to its motivating source. Even when the act of running is motivated by an effort to avoid contact with the police, it still does not constitute the type of specific and articulable fact that is constitutionally sufficient to justify a stop.

. . . .

The facts known to the officers when they commenced their chase of the defendant did not satisfy the threshold constitutional requirement of reasonable suspicion.

*People v. Thomas, supra*, at 1275–76.

In *Rahming*, the officer observed three young men dressed in clothing identified with a gang leaving an apartment building known to be occupied by members of a rival gang. Two of the young men broke and ran back into the building upon seeing the officer and the defendant remained. After the officer left the immediate area, the young men got into a vehicle and drove away. The officer followed the vehicle to a convenience store parking lot without observing any traffic violations and made contact in the parking lot. After searching the defendant, who was driving, for weapons, and finding none, the officer requested and was granted permission to search the trunk of the vehicle where he found a black and white television and jewelry. The officer was then informed, by radio, that the vehicle had been involved in a burglary and the defendant was arrested. The trial court suppressed the items found in the trunk and the supreme court affirmed.

The prosecution, in *Rahming*, relied on a number of facts as a basis for forming the requisite articulable suspicion including the dress of the individuals, the reputation of the apartment complex, and the reaction of the two individuals who ran upon observing the officer. The supreme court stated that these collective circumstances, most particularly, the wish to avoid contact with the police did not, without more, justify an investigatory detention.

Applying these principles, I agree with the trial court that the circumstances here did not justify an investigatory detention. Therefore, I would affirm the district court.