The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

James Earl DIXON, Defendant–Appellant.

No. 99CA1179.

Colorado Court of Appeals,
Div. V.

Dec. 21, 2000.

Rehearing Denied Feb. 15, 2001.

Ken Salazar, Attorney General, Beth Elliott–Dumler, Special Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Christopher H. Gehring, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge NIETO.

Defendant, James Earl Dixon, appeals the judgment of conviction entered upon a jury verdict finding him guilty of unlawful possession of a schedule II controlled substance. On appeal, defendant's sole claim is that the trial court erred in denying his motion to suppress evidence obtained as the result of an allegedly unlawful search. We reverse the order and the judgment, and we remand for further proceedings.

The following evidence elicited at the suppression hearing forms the factual basis for this appeal.

An undercover police officer testified that he and a second officer were conducting surveillance on a house that they suspected was the site of illegal narcotics sales. The basis for that suspicion was a tip that had been anonymously conveyed to the second officer.

The second officer did not testify at the suppression hearing. Although the undercover officer who did testify had no knowledge concerning the timing or basis of the anonymous report, he did know that the anonymous informant had not provided a description of either a suspect or a suspected vehicle.

The undercover officer testified that, after watching the house for approximately twenty minutes and not seeing anyone enter or exit, he observed a car pull up in front of the house and park. The officer saw defendant get out the car, enter the house for about one minute, and then return to the car. Defendant got in the back seat of the car and the vehicle pulled away.

The undercover officer followed the car and saw the driver exceed the posted speed limit by fifteen miles per hour and make several lane changes without using a turn signal. The undercover officer radioed this information to a patrol unit and asked the patrol officer to stop the vehicle. The undercover officer described defendant and indicated that he was a suspect in a narcotics transaction.

A patrol officer testified that, shortly after receiving the call, he and his partner located the car described by the undercover officer. The car was parked on the street. The officers activated the overhead lights of their patrol car as they approached. The driver got out of the car and defendant, who matched the description provided by the undercover officer, got out of the car on the passenger side. Defendant began to walk towards a nearby house. The patrol officer ordered defendant to return to the vehicle. The officer repeated this command. Defendant looked at the officer in a manner indicating that he had heard; however, he continued to walk towards the house.

The officer caught up with defendant as he was entering the house and arrested him for violating a municipal ordinance that prohibits a person from disobeying a police officer's lawful order if doing so interferes with or hinders an officer's discharge of official duties. The officer then conducted a pat-down search of defendant's person and discovered the crack cocaine that formed the basis for the charge in this case.

The trial court denied defendant's motion to suppress this evidence, finding that the patrol officer had a reasonable, articulable suspicion that defendant was involved in criminal activity sufficient to justify an investigative detention to search him for weapons or to prevent him from obtaining a weapon from inside the house. The trial court further found that, once defendant disobeyed a lawful order issued in furtherance of that investigative detention, the officer had probable cause to arrest defendant for violating the municipal ordinance. Finally, the trial court found that the cocaine was discovered during a valid search incident to that arrest.

In reviewing a suppression order, we must examine whether the trial court's findings of historical fact are adequately supported by competent evidence and whether the trial court applied the correct legal standard to these findings. We grant deference to those factual findings of the trial court that are supported by competent evidence in the record and review the totality of the

circumstances to reach the ultimate legal conclusion with respect to the suppression order. *People v. Morley*, 4 P.3d 1078 (Colo. 2000).

■ Here, the trial court made two factual findings that have no evidentiary support in the record. The trial court found that the undercover officers had received information indicating that "gangs" were selling "crack cocaine" at the house they were watching. However, our review of the record reveals that the undercover officer testified he was a member of a gang unit without ever suggesting that he or his partner had any reason to believe that gang members were involved in the controlled substance sales reported by the anonymous informant. Likewise, the undercover officer never testified that he or his partner had any information regarding what particular type of "narcotics" were allegedly being sold at the house. Accordingly, we do not rely on these two findings in assessing the totality of circumstances existing at the time defendant was contacted by the police.

## I. Reasonable Suspicion of a Drug Transaction

■ An anonymous tip, by itself, lacks sufficient indicia of reliability to establish reasonable suspicion. Therefore, information supplied by an anonymous source may warrant an investigatory stop only if it is verified by sufficient independent corroborating evidence of criminal activity. *People v. Salazar*, 964 P.2d 502 (Colo.1998).

In this case, there is no evidence indicating that the anonymous informant supplied any detailed knowledge of the house the officers were watching or made any predictions concerning what the officers would observe there. The sole piece of evidence that was possibly corroborative of the anonymous tip was the officer's opinion, based on his experience, that the brevity of defendant's visit was consistent with an unlawful narcotics transaction. However, this observation of outwardly innocent behavior was of minimal significance because the officer did not see any other visitors behaving similarly, and he did not see defendant exchange anything with any person in the house.

The undercover officer's subsequent observations of the car did not corroborate his suspicion that the occupants were involved in drug activity. Although the officer testified that he saw the driver commit minor traffic violations, he did not describe the driving as evasive. Furthermore, the undercover officer admitted that he had no reason to believe there was drug activity being conducted at the second house which defendant was trying to enter at the time he was arrested.

Accordingly, we conclude that the totality of circumstances known to the officers in this case did not give rise to an articulable and specific basis to believe that defendant, or any other occupant of the car, was involved in illegal drug activity. *See People v. Salazar*, supra (no reasonable suspicion where an anonymous person called the police and reported that an individual matching defendant's description was selling cocaine at a bar, because the caller did not disclose the basis for his information, and the officer did not know of any suspicious circumstances surrounding the bar). However, this determination does not end our inquiry, because the stop of the car was also based on the traffic infractions committed by the driver.

## II. Lawfulness of the Traffic Stop

■ As set forth above, the driver in this case parked his car just before the patrol officers arrived at the scene and activated the overhead lights of the patrol car. Nevertheless, because the two events happened almost simultaneously, we will analyze the interaction as a traffic stop.

■ A traffic stop is a seizure within the meaning of the Fourth Amendment and is lawful when an officer has reasonable suspicion of criminal activity and when the reason for the stop is related to the facts known to the officer at the time of the encounter. *People v. Paynter*, 955 P.2d 68 (Colo.1998).

Here, the record supports the trial court's finding that the undercover officer observed the driver of the car commit several traffic violations. Therefore, we conclude the patrol officers were justified in contacting and detaining the *driver* of the vehicle in order to investigate those traffic violations. *See Peo-*

*ple v. Washington,* 865 P.2d 145 (Colo.1994) (the "fellow officer" rule provides that an arresting officer who does not personally possess sufficient information to constitute probable cause may nevertheless make a warrantless arrest if he or she acts upon the direction or as a result of a communication from a fellow officer, and the police, as a whole, possess sufficient information to constitute probable cause); *People v. Sosbe,* 789 P.2d 1113 (Colo.1990) (police officers initially lacked reasonable grounds to stop car when they began following but acquired reasonable grounds when they observed it speeding).

### III. Detention of a Passenger During a Traffic Stop

■ The dispositive question in this case thus becomes whether a police officer may lawfully detain a passenger who has exited from a vehicle that has stopped at its destination, when the driver of the vehicle has been contacted for minor traffic violations, and when the officer lacks reasonable suspicion to believe that the passenger is involved in criminal activity. This is an issue of first impression in Colorado. *Cf. People v. Evans,* 886 P.2d 288 (Colo.App.1994) (defendant, who was a passenger in a car stopped for a burned out headlight, got out of the car, ignored officer's orders to get back into the car, and began to run away; appellate court did not need to determine whether officer had reasonable suspicion to detain defendant, because evidence established that defendant abandoned contraband when being chased and a chase is not a seizure).

■ Under narrowly defined circumstances, a police officer may make a limited intrusion into an individual's personal security on less than probable cause. The circumstances under which an officer may detain an individual are limited because the individual interest at stake is far from insignificant: it is the right of every person to enjoy the use of public streets and other conveniences without unwarranted interference or harassment by agents of the law. *People v. Rahming,* 795 P.2d 1338 (Colo.1990).

■ Three conditions must exist before an individual may be subjected to an investigative stop and a limited search of his person: (1) there must be an articulable and specific basis in fact for suspecting that criminal activity has taken place, is in progress, or is about to occur; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose. *People v. Rahming, supra.*

■ The existence of these conditions must be judged against an objective standard that takes into consideration the facts and circumstances known to the officer at the time of the intrusion and evaluates the purpose, scope, and character of the intrusion in light of those facts. In determining whether this objective standard has been met, the critical focus necessarily centers upon the facts known to the officers immediately prior to the intrusion. *People v. Rahming, supra.*

The Supreme Court has held that a police officer who lawfully stops a vehicle for traffic violations may reasonably order the passenger to exit the vehicle because:

> the passengers are already stopped by virtue of the stop of the vehicle. The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car. Outside the car, the passengers will be denied access to any possible weapon that might be concealed in the interior of the passenger compartment.

*Maryland v. Wilson,* 519 U.S. 408, 414, 117 S.Ct. 882, 886, 137 L.Ed.2d 41, 47 (1997); see also *People v. Melgosa,* 753 P.2d 221 (Colo. 1988) (officer may order passenger out of car stopped for traffic offense). However, the Supreme Court in *Maryland v. Wilson* expressly left undecided the question whether a police officer may detain a passenger during a traffic stop of the driver.

In *Walls v. State,* 714 N.E.2d 1266 (Ind. App.1999), a divided division of the Indiana Court of Appeals addressed that unanswered question and held, on facts virtually identical to those presented here, that the rationale of *Maryland v. Wilson* did not justify the detention of a passenger departing on foot from the scene of a traffic stop. The *Walls* court reasoned that a police officer has no reason-

able basis to prevent a passenger from leaving the scene of a traffic stop unless the passenger flees the scene, makes a furtive movement, somehow threatens the officer's safety, or engages in other conduct giving rise to an articulable suspicion of criminal activity. The *Walls* court specifically rejected the notion that, absent reasonable suspicion to believe that a passenger is armed or involved in criminal activity, a police officer may order the passenger to remain at the scene simply to maintain control of the situation.

Similarly, in *Wilson v. State,* 734 So.2d 1107 (Fla.App.1999), *cert. denied, Florida v. Wilson,* 529 U.S. 1124, 120 S.Ct. 1996, 146 L.Ed.2d 820 (2000), a division of the Florida Court of Appeals held that the officer safety rationale of *Maryland v. Wilson* did not provide a police officer with a lawful basis for ordering defendant, a passenger in a car stopped for traffic violations who had gotten out of the car and was walking towards a nearby bar, to return to the car. The court in *Wilson v. State, supra,* 734 So.2d at 1112, summarized the passenger's privacy interest as follows: "A wholly innocent passenger should have the right to choose whether to continue on with his business or return to the vehicle and remain by his driver-companion's side." Accord *Castle v. State,* 999 P.2d 169 (Alaska App.2000) (officer had no authority to order defendant, a passenger in a car stopped for a headlight violation, to return to the car; defendant could not be detained as a potential witness to the offense or for officer safety); *State v. Mendez,* 137 Wash.2d 208, 970 P.2d 722 (1999) (officer was not authorized to order that a passenger return to scene of traffic stop; decided under state constitution); *see also Dennis v. State,* 345 Md. 649, 693 A.2d 1150 (1997) (reversing disorderly conduct conviction because there was no valid basis to detain a passenger in a lawfully stopped vehicle who ignored a police command to remain in the vehicle and walked away from the scene; no evidence explained why it was safer for the officer to detain the passenger than allow him to walk away).

Other courts have reached the opposite conclusion. For example, in *State v. Web-ster,* 170 Ariz. 372, 824 P.2d 768 (Ariz.App. 1991), a divided division of the Arizona Court of Appeals reasoned that an order directing a passenger to return to a car stopped for a traffic violation imposes no greater intrusion on the passenger's freedom than an order directing a passenger inside a stopped car to get out. In addition, the court was persuaded that the interest in protecting the officer does not dissipate when a passenger gets out of a stopped car:

> We cannot allow the officer's safety to depend on how fast the driver and passenger can get out of the vehicle after it has been stopped. Ordering the occupants back into the vehicle does no more than establish the status quo at the time of the stop. To hold otherwise could well lead to the unnecessary death of an officer, gunned down by those walking away who suddenly turn and fire or who circle behind the officer, either assaulting or killing him while he is talking to the driver.

*State v. Webster, supra,* 170 Ariz. at 374, 824 P.2d at 770. *Accord People v. Gonzalez,* 184 Ill.2d 402, 235 Ill.Dec. 26, 704 N.E.2d 375 (1998) (officer authorized to order return of a passenger who "abruptly" exited from a car stopped for traffic violations); *Carter v. State,* 229 Ga.App. 417, 494 S.E.2d 108 (1997) (officer authorized to order return of a passenger in a car which was stopped for erratic driving in a high crime area where the passenger first walked, and then ran, from the scene).

In analyzing this division of authority, we acknowledge that there may be circumstances where officer safety concerns arise that would justify the exercise of some degree of control over a passenger. The variety of possible circumstances surrounding a traffic stop are almost limitless, and sometimes the circumstances pose a great risk of harm to the police officer. In such situations, it may well be reasonable for the investigating officer to exercise some measure of control over the passenger. However, we are not convinced that similar officer safety concerns are present when a vehicle has arrived at its destination before the stop and a passenger exits from the vehicle in a nor-

mal manner and proceeds to his or her destination.

Accordingly, we hold that the patrol officer in this case was not lawfully justified in detaining defendant merely because he had been a passenger in the car. Moreover, our review of the record does not reveal any other reasonable basis justifying detention of defendant.

The patrol officer did not observe defendant make any furtive gestures. *See, e.g., People v. Cagle,* 688 P.2d 718 (Colo.1984) (passenger's furtive conduct in bending down in his seat after officer activated emergency lights warranted reasonable belief that passenger had weapon beneath his seat).

The patrol officer did not observe anything about defendant's appearance suggesting that defendant might have been armed. *See People v. Rahming, supra* (holding that officer lacked reasonable suspicion to conduct a pat-down search for weapons where the officer had not observed any bulges in the defendant's clothing or any other indication that he was carrying a weapon).

Defendant's presence in the car as a passenger did not in any way implicate him in the traffic offenses for which the vehicle was stopped. *See, e.g., People v. H.J.,* 931 P.2d 1177 (Colo.1997) (because officers had a reasonable basis for suspecting that the stopped vehicle was stolen, it was reasonable for them to detain and question the passengers; knowledge or suspicion that one of the occupants has been involved in criminal activity occurring within the car, or involving the car itself, serves as a basis for a reasonable suspicion that the other occupants may be participants in that activity).

Although defendant did walk away from the car, there was no evidence suggesting that he was running or otherwise fleeing in a manner indicating evasive intent. *See Walls v. State, supra.* To the contrary, the officer's description of defendant's approach to the house suggests that defendant was simply walking from the parked car towards the house that was his planned destination. And, as set forth above, there was no evidence presented indicating that the house

defendant was approaching was associated with illegal drug activity.

In summary, we conclude the patrol officer in this case had no lawful basis to order defendant back to the car. This determination compels us to conclude further that the patrol officer did not have probable cause to arrest defendant for violating the municipal ordinance prohibiting disobedience of a lawful police order. And, because the officer did not have probable cause to arrest defendant, the search incident to that unlawful arrest was necessarily unlawful, and the evidence obtained as a result of that search must be suppressed.

The trial court's order denying defendant's motion to suppress is reversed, the judgment of conviction is reversed, and the cause is remanded for further proceedings consistent with this opinion.

RULAND and ROY, JJ., concur.